ANBECK COMPANY, et al., Appellants,

v.

ZAPATA CORPORATION, et al., Appellees.

No. C2951.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 19, 1982.

**610**

Robin C. Gibbs, Debora D. Ratliff, Wood, Campbell, Moody & Gibbs, Houston, for appellants.

William M. Coats, Marilyn H. Elam, Armogida .& Coats, Hugh Rice Kelly, Richard K. Willard, Baker & Botts, Houston, for appellees.

Before MILLER, MORSE and PRICE, JJ.

## OPINION

PRICE, Justice.

This is an appeal from a judgment on a jury verdict wherein appellants, Anbeck Company, Keltron Corporation, N.H. Jones, A.E. Joslin, T.J. Hayes, and E.F. Leeman, plaintiffs in the court below, were denied relief on their claim for breach of a written contract. Appellants sought to recover full title to certain stock placed in escrow as part of the consideration to be paid by appellee, Zapata Corporation, on the contract. Appellants bring forward ten points of error. We affirm.

The contract in question, dated January 15, 1971 and styled "Agreement and Plan of Reorganization" (Agreement), provided that Anbeck Company (Anbeck) and Keltron Corporation (Keltron) sell substantially all of their assets to Zapata Corporation (Zapata). Zapata would in turn organize a corporation to exist as a wholly owned subsidiary of Zapata to acquire and accept the assets sold by Anbeck and Keltron.

The principal assets sold were certain patent rights and machines relating to a novel method of making pipe joints. This method was originally known as the "buckle joint," but Zapata renamed the method the "Zap-Lok" joint.

The consideration for the sale took the form of an initial payment of 22,770 shares of Zapata common stock, worth about $600,-000, to be delivered by Zapata on the closing date. An additional 22,770 shares were placed in an escrow account at First City National Bank of Houston, another appellee herein, to be delivered to Anbeck and Keltron upon the attainment by Zapata's subsidiary, Zapata Pipeline Technology (ZPT), of certain operating income levels through marketing the "Zap-Lok" joint during the period from March, 1971 through September 30, 1975. The number of additional shares would be determined by an "earnout" formula based on an anticipated gross operating income of the subsidiary of $3,725,000 from the closing date through September 30, 1975. The Agreement provided that any shares of this additional stock remaining in escrow after delivery out of escrow, pursuant to the formula, would be returned to Zapata and cancelled. The Agreement further provided that all

material decisions affecting the scope and direction of ZPT's activities and its organizational and legal structure would be made by Zapata.

Subsequent to the sale, Anbeck and Keltron were dissolved. Consequently, all of their assets under the Agreement vested in the corporations' shareholders, the individual appellants named above. Because First City National Bank of Houston did not file a brief herein, we will refer to Zapata either as "Zapata" or "appellee."

Appellants brought suit to recover full title to and possession of the escrowed stock. Although it is undisputed that ZPT never achieved the operating income levels prescribed in the Agreement, appellants asserted that failure of this condition precedent was caused by Zapata's own conduct because it "wrongfully prevented [the condition] from being satisfied. . . ." Appellants claimed that Zapata intentionally attempted to prevent ZPT from achieving any profits or that the condition precedent was not satisfied because of Zapata's negligence or failure to use reasonable diligence in managing the subsidiary. Zapata contended that the contract doctrine of wrongful prevention of a condition precedent required a fraudulent or intentional prevention or a failure to act in good faith and that appellants' "negligent" prevention theory should not be applied to circumvent the law of implied covenants.

At the conclusion of the evidence, the trial court submitted the case to the jury on special issues. Special Issue No. 1 inquired whether Zapata prevented ZPT from earning sufficient operating income to receive all or part of the escrowed stock pursuant to the Agreement. Special Issue No. 2 inquired whether such conduct, if any was found, resulted from Zapata's failure to exercise good faith in making management decisions. The jury found that Zapata did not prevent the necessary income from being earned, and the conditioned issue on good faith was not answered. Judgment on the verdict was entered for Zapata. Appellants appeal from that judgment.

Appellants' points of error 1 through 4 all concern the court's submission of Special Issue No. 2 and its accompanying definition. In points of error 1 and 3, appellants assert that the trial erred in overruling their objections to the charge and in refusing to submit their requested issue and definition because the requested issue and definition are based upon the proper legal standard governing the question of prevention. Appellants requested the following special issue and definition:

Do you find from a preponderance of the evidence that such prevention, if any, was a result of the failure, if any, of Zapata Corporation to exercise reasonable diligence in the management of ZPT?

"Reasonable diligence in management" as used herein means that the person or persons making and implementing management decisions used that degree of diligence which would be used by a person of ordinary prudence under the same or similar circumstances to investigate and obtain the relevant and available facts and exercised such diligence in making and implementing such decisions based upon such facts.

In support of their contention that "reasonable diligence" is the correct legal standard, appellants state that Zapata's right given it by the Agreement to make all material decisions for the subsidiary was accompanied by a "corresponding legal duty to exercise its control in a reasonable, prudent and diligent manner, all in the exercise of ordinary care and so as not to prevent or hinder the occurrence of the condition." Appellants thus argue that because of this "obligation" by Zapata to use "reasonable diligence" in the management of ZPT, the condition precedent is eliminated by appellee's "negligent" prevention. Since this "obligation" is not anywhere expressly provided for in the contract, appellee raises the question whether the written contract implies a covenant that Zapata would manage ZPT with reasonable diligence and due care.

The most recent Texas Supreme Court case on the doctrine of implied covenants is *Danciger Oil and Refining Co. of Texas v.*

*Powell,* 137 Tex. 484, 154 S.W.2d 632 (1941). The question there was whether an instrument conveying a mineral interest contained an implied covenant to develop the property. The Supreme Court stated:

> In the outset it should be noted that when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole. An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument as a whole.

154 S.W.2d at 635.

In *Palm v. Mortgage Investment Co. of El Paso,* 229 S.W.2d 869 (Tex.Civ.App.—El Paso 1950, no writ), Plaintiff leased a building to Defendant with a minimal monthly rental plus a percentage of the gross sales. The lease provided that the premises should be used only for a shoe store and shoe repair business. When Plaintiff notified Defendant prior to the expiration of the lease of the intent not to renew the lease, Defendant stopped operating the shoe store. Plaintiff sought to recover additional rents under the lease, arguing that the lease impliedly bound Defendant to operate "in good faith . . . a . . . store of the . . . kind and character as an operator of ordinary prudence would have maintained and con-

ducted" in the location. The Court declined to imply such general covenants, holding that such covenants would enlarge the express terms of the contract in violation of the rule announced in *Danciger Oil, supra.* The Court continued:

> Furthermore, such implications would require conduct on the part of lessee so vague, indefinite and uncertain that he could not determine his obligation under the contract and would violate that portion of the above quoted rule [in *Danciger Oil*] which requires that the implied covenant should be of comtemplated conduct so clearly within the contemplation of the parties that they deemed it unnecessary to express it. Under the rule a covenant which requires conduct which the parties themselves cannot define with certainty will not be implied.

229 S.W.2d at 874.

Similarly, in *Weil v. Ann Lewis Shops, Inc.,* 281 S.W.2d 651 (Tex.Civ.App.—San Antonio 1955, writ ref'd), a commercial tenant agreed to pay a minimum rental plus a percentage of gross receipts from the business conducted on the premises. The Court refused to imply an obligation that the tenant would occupy the premises and conduct the business "with such skill and diligence that 5% of the gross receipts would greatly exceed the guaranteed minimum rental of $650 per month." 281 S.W.2d at 656. The Court found that such an obligation was not intended by the parties and that if it were, the standard by which to measure the conduct of appellee in the running of the business was not certain and definite enough "so as to make appellee's failure to do so result in damages which could be computed with some degree of certainty." 281 S.W.2d at 656.

In the instant case, appellants urge that the standard agreed upon by the parties for the management of the subsidiary was one of "reasonable care" and "ordinary prudence." The records reflects, however, that when the parties considered the question of Zapata's contribution of working capital for ZPT, the parties rejected a draft which

provided for Zapata to contribute capital to the extent the "prudent conduct" of the business required. Instead, the Agreement provides for Zapata to use its best efforts which in its judgment is appropriate to the conduct of the subsidiary's business. We agree with Zapata that the terms "prudent conduct" and "reasonable care" are difficult enough to apply in traffic collision cases without corporate management being subjected to liability every time it is determined that a decision made was unsuccessful.

In the recent case of *Dallas Power & Light Company v. Cleghorn,* 623 S.W.2d 310, 311 (Tex.1981), the Texas Supreme Court cited *Danciger Oil, supra,* with approval. Although the Court there did not discuss implied covenants in general, the Court held that where the lease expressly negates the covenant, there can be no implied covenant. While the Agreement before us does not expressly negate any implied covenant, the section of the Agreement entitled *Certain Covenants of Zapata* only includes covenants that Zapata will not use either of the names "Anbeck" or "Keltron" in the subsidiary's name and that Zapata will use its best efforts to provide the subsidiary with up to an aggregate of $1,000,000 in working capital. Further, the last section of the Agreement provides in part as follows:

> 16. *Miscellaneous.* This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and no such party shall be liable or bound by any representations, warranties or agreements except as specifically set forth herein.

In accordance with the cases discussed above, it is thus apparent from the Agreement that an implied covenant to use reasonable diligence in management did not arise from the "presumed intentions of the parties."

The principal case relied on by appellants for their contention that the condition precedent is eliminated as a result of Zapata's conduct is *Ebberts v. Carpenter Produc-*

*tion Co.,* 256 S.W.2d 601 (Tex.Civ.App.—Beaumont 1953, writ ref'd n.r.e.). There, Plaintiff sold certain personal property to Defendant for a cash down payment and the additional sum of $5,000 payable out of proceeds from oil produced and sold from a well which was not then producing and in which some tubing and rods were stuck. The sale took place in 1943, and the Defendant purchaser never made any attempt to recondition the well or restore it to production. In 1947 or 1948, one of Defendant's agents destroyed the well by pulling the casing out of the ground. Defendant had told the agent to pull the casing from all of its dead wells but it failed to tell the agent not to pull the casing from the particular well in question. The Court first found that there was an implied promise in the contract to recondition the well arising from an implied promise to restore the well to a state out of which oil could be produced. The Court found that Defendant breached the implied promise to recondition the well. By its subsequent destruction of the well, Defendant went further and breached the implied promise not to prevent the performance of its first promise; i.e., to recondition the well. The Court stated:

> There was a breach of contract if there was a conditional implied promise to make the oil payments or if there was the unconditional promise to recondition the wells to which Ebberts [plaintiff] testified. Incidental to such promises would be an implied promise not to prevent the happening of conditions upon which the promise depended and not to prevent the performance of the promise; and since the destruction of the wells resulted in the total destruction of the subject matter of these promises and of the value of these promises, the promisee Ebberts was entitled to recover the full value of those promises as damages.

256 S.W.2d at 619. Although the Court characterized Defendant's mistake as "negligent," it was in effect deciding a case of breach of an implied promise to recondition. *Ebberts* is thus distinguishable. In the instant case, there was no implied promise by Zapata to use reasonable diligence and ordi-

nary care in the management of ZPT. Appellants' contention that "reasonable diligence" is the proper legal standard is thus without merit. We overrule appellants' points of error 1 and 3.

■ Appellee urges that if there was any covenant to be implied in the contract, it would be one of good faith and fair dealing, as was submitted to the jury in Special Issue No. 2. We agree.

Although our research has not revealed many Texas cases which have considered this question, it is fair to say that if there is any legal standard to be applied to the manner of performance by Zapata in the instant case, it would be one to manage the subsidiary in the spirit of good faith.

In *Super-Cold Southwest Co. v. First Baptist Church of Corsicana,* 219 S.W.2d 569 (Tex.Civ.App.—Waco 1949, writ ref'd n.r.e.), the parties entered into a contract for the sale and installation of air conditioning equipment for an agreed price of $8,500. After the equipment was installed, a dispute arose as to the sufficiency of the equipment. The parties entered into an arbitration agreement whereby a test would be run to determine whether the air conditioning equipment was maintaining a temperature in the auditorium fifteen degrees cooler than the temperature recorded in the outside of the church. If the equipment passed the test, the balance of the purchase price would be paid by the church. On the day of the test, the representatives of the church found that Super-Cold had placed the inside thermometers flat on the floor and that they had placed the outside thermometers in an aperture between two buildings painted with white walls. The trial court found that the placement of the thermometers in those areas did not secure an accurate representation of the temperatures in question, and that Super-Cold fraudulently placed them there as a matter of law. The appellate court affirmed, holding as follows:

> Regardless of whether the contract is ambiguous or unambiguous, it was incumbent upon appellant to exercise good faith in carrying out the terms of the contract so

as to comply with the intention of the parties and to accomplish the purpose for which it was executed, as clearly expressed. The contract does not contain an express provision providing that the appellant should exercise good faith in the method used in making the test. The intention of the parties as disclosed from the entire contract clearly reveals that it was intended that a fair test should be made. The obligation to use good faith in carrying out what is written underlies all written Agreements of the character of the one which is now in question. Although the contract may not expressly so provide, such provision will be implied.

219 S.W.2d at 573. *See also: Ennis Business Forms, Inc. v. Gehrig,* 534 S.W.2d 183 (Tex.Civ.App.—Waco 1976, writ ref'd n.r. e.); *Campbell v. Hart,* 256 S.W.2d 255 (Tex. Civ.App.—Fort Worth 1953, writ ref'd n.r. e.); *Kelly v. Corrington,* 105 S.W. 1155 (Tex.Civ.App.1907, no writ). We agree with the decision in *Super-Cold Southwest Co., supra,* and hold that the proper standard to be applied here is an obligation by Zapata to conduct the business of the subsidiary in good faith.

Appellants contend in point of error 2 that the court's submission of a good faith standard and its refusal to submit appellants' requested issue and definition were prejudicial to appellants because they tried their case on a "reasonable diligence" theory. Because "reasonable diligence" is not the legal standard to be applied in the instant case, we find that appellants were not harmed by the court's failure to submit their requested issue and definition. We overrule appellants' point of error 2.

■ In point of error 4, appellants contend that the court's alleged error in submitting the wrong legal standard in Special Issue No. 2 precluded them from arguing "negligent mismanagement" and permitted appellees to argue that any prevention found needed to be "intentional" or done in "bad faith." At trial, appellants' objections to the charge were not based on these grounds. Rule 274 of the Texas Rules of Civil Procedure requires that a party ob-

jecting to a charge point out distinctly the matter to which he objects and the grounds of his objections. Any complaint as to an issue or definition is deemed waived unless specifically included in the objections. *Corpus Christi Bank and Trust v. Roberts,* 587 S.W.2d 173 (Tex.Civ.App.—Corpus Christi 1979), *reformed in part and aff'd in part on other grounds,* 597 S.W.2d 752 (Tex.1980). Because appellants failed to frame their objections to the charge on the same grounds of which they complain on appeal, appellants waived these objections. Further, appellants were not harmed by this alleged error, since we have held that "reasonable diligence" is not the correct legal standard. We overrule appellants' point of error 4.

Appellants assert in point of error 5 that the trial court erred in submitting Special Issue No. 1 because it was duplicitous of Special Issues Nos. 3 and 3a. We disagree.

■ The controlling fact issue here is whether Zapata *prevented* ZPT from earning the necessary income levels so as to eliminate the condition precedent to the contract and subject Zapata to absolute liability. Special Issue No. 1 made this factual inquiry. It did not inquire, as was inquired in Special Issue No. 2, whether such prevention, if found, was wrongful. Special Issue No. 3 inquired whether such *conduct,* if affirmatively found in Special Issue Nos. 1 and 2, proximately caused the failure of ZPT to earn sufficient operating income to receive all or part of the stock in escrow. Because this issue on proximate cause does not have the "prevention" element in it, it is not duplicitous of Special Issue No. 1. Likewise, Special Issue No. 3a is not duplicitous of Special Issue No. 1 because these issues make entirely different inquiries. Special Issue No. 3a inquired as to how much money, *but for* the prevention (wrongful or otherwise, if found,) ZPT would have earned or lost if Zapata had not prevented it from earning gross operating income. This is not the same fact inquired about in Special Issue No. 1. We find these issues were properly submitted and consequently overrule appellants' point of error 5.

■ Appellants complain in point of error 6 that the "duplicitous" nature of Special Issue No. 1 caused the jury confusion and created a conflict in their minds concerning their deliberations on Special Issue Nos. 1, 3 and 3a. They contend that this caused the jurors to believe that Special Issue No. 1 required proof of an intentional prevention. We disagree for several reasons.

First, the wording of Special Issue No. 1 is neutral and does not mention intent. Second, at the hearing on the motion for new trial, one of the jurors testified that several of the jurors believed the issue to be whether "[it did] in fact happen" as opposed to whether any prevention was done "deliberately." Third, during final arguments, appellants' attorney stated that Special Issue No. 1 "inquires simply" whether Zapata prevented ZPT from earning the required income. Appellants' contention is thus without merit. We overrule appellants' point of error 6.

Appellants complain in points of error 7 and 8 of the trial court's alleged error in sustaining appellees' objection to the admission in evidence of their Exhibit 81 and testimony relating thereto. This exhibit is a letter dated March 16, 1979, discharging William H. Flynn as Chairman of the Board of Zapata. Appellants contend that the letter was relevant and material to prove "that the Zapata employee who made crucial management decisions for ZPT was subsequently fired by appellee for incompetence and alcoholism." Appellants further contend that the exhibit contained admissions of a party opponent regarding facts relevant and material to prove that "Zapata employees acted negligently in managing the business of ZPT . . . ."

■ We have reviewed the letter and find that the events chronicled therein concern incidents of Mr. Flynn's abuse of alcohol occurring in 1978 or 1979, five or six years after the significant period of this lawsuit. Appellants failed to introduce any evidence tending to show that such conduct

affected the decisions he made with regard to ZPT during the "earn-out" period. Contrary to appellants' assertion, the decision by Zapata to defer the sales proposal, which they assert was ZPT's downfall because "lease only" of the Zap-Lok joint was not proving to be profitable, was made not by Flynn but by the entire ZPT management team. We find that the trial court was correct in excluding the letter since it would have injected unnecessary prejudice in the case and was not relevant to any issue in the case.

Assuming, *arguendo,* that it was error for the court to exclude the testimony, such error was rendered harmless by the admission in evidence of Ms. Carolyn Kato's testimony. Over appellee's objections, Ms. Kato, a former secretary of Mr. Flynn, testified to Mr. Flynn's problems with alcohol during the period between 1973 and 1975. However, on cross-examination she testified that Mr. Flynn's problems at this time took place off of the premises of Zapata and not while he was working at the office. We find the trial court did not err in excluding appellants' Exhibit 81 from the evidence. We overrule appellants' points of error 7 and 8.

■ In their points of error 9 and 10, appellants contend that the trial court erred in overruling their motion for new trial on grounds of jury misconduct. They assert that the foreperson improperly influenced, intimidated and harrassed the other jurors to answer the issues in the manner she believed correct.

Rule 327 of the Texas Rules of Civil Procedure provides that the trial court may grant a new trial if the party alleging jury misconduct proves that misconduct actually occurred, that such misconduct was material, and that based on the record as a whole, the conduct probably resulted in injury to the complaining party. *Strange v. Treasure City,* 608 S.W.2d 604 (Tex.1980). If the trial court overrules the motion for new trial without opinion, it is presumed that the trial court found that no misconduct occurred, provided there is evidence to support such a finding. 608 S.W.2d at 606;

*Argonaut Insurance Company v. ABC Steel Products Co., Inc.,* 582 S.W.2d 883 (Tex.Civ. App.—Texarkana 1979, writ ref'd n.r.e.). We have reviewed the evidence adduced at the hearing on the motion for new trial and find that the trial court did not abuse its discretion in refusing to grant a new trial. Appellants' points of error 9 and 10 are overruled.

■ Appellee brings forward three cross-points. In its first cross-point, Zapata asserts that the trial court erred in admitting Ms. Kato's testimony concerning Flynn's alleged occasional intoxication. The jury ultimately found that Zapata did not prevent ZPT from earning the necessary income levels. Consequently, such error, if any, was harmless, since Zapata suffered no harm by the admission into evidence of this testimony. Tex.R.Civ.P. 434. We overrule appellants' first cross-point.

In its second cross-point, Zapata contends that the trial court erred in overruling its motion for directed verdict because "under Texas Law appellants were not entitled to recover future profits of a new and unestablished business." While appellee has correctly stated the law, this rule is not applicable to the instant case.

■ The reason behind the rule proscribing the recovery of future profits of a new and unestablished business is to eliminate the uncertainty, conjecture, and speculation in establishing a measure of damages in such a case. Although ZPT was in fact a new and unestablished business, appellants did not bring suit to recover "future profits" in the usual sense; rather, they were trying to recover a definite and certain amount agreed to by the parties as consideration for the sale of the assets. Because of this distinction, all of the cases cites by appellee are disguishable. Consequently, we overrule Zapata's second cross-point.

Appellee asserts in its third cross-point that the trial court erred in overruling its motion for directed verdict on the ground that there is no evidence in the record from which the jury could have found that Zapata management did not exercise honest

business judgment in making policy decisions concerning the marketing of the Zap-Lok joint.

The proper standard of review for a directed verdict is whether reasonable minds may differ as to the truth of controlling facts. *Transport Insurance Company v. Liggins,* 625 S.W.2d 780 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.). The task of an appellate court in such a case is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. The court must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, discarding all contrary evidence and inferences. When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978).

We have reviewed the evidence and find that reasonable minds may differ as to whether Zapata exercised honest business judgment in making marketing decisions for ZPT. Consequently, we find the trial court did not err in overruling its motion for directed verdict. We overrule Zapata's third cross-point.

The judgment of the trial court is affirmed.