CITY OF SAN BENITO, Appellant,

v.

Calixtro CANTU, Sr., Individually and on Behalf of the Estate of Calixtro Cantu, Jr. and Maria Teresa Cantu, Individually, Appellees.

No. 13–91–001–CV.

Court of Appeals of Texas, Corpus Christi.

May 7, 1992.

Paul Q. O'Leary, Hirsch, Glover, Robinson & Sheiness, Brownsville, Kathleen Walsh Beirne, Kruse, Laser & Griffin, Houston, for appellant.

Cesar A. Amador, Richard C. Arroyo, Arroyo & Amador, Brownsville, for appellees.

Before NYE, C.J., and BISSETT * and SEERDEN, JJ.

## OPINION

BISSETT, Justice (Assigned).

This is an appeal by the City of San Benito, defendant in the trial court, from a judgment which was rendered for plaintiffs in a wrongful death action. We reverse and render.

Calixtro Cantu, Sr., individually and on behalf of the Estate of Calixtro Cantu, Jr., and his wife, Maria Teresa Cantu, individually ("the Cantus") filed suit against the City of San Benito ("the City") and Cameron County Irrigation District No. 2 ("the District") to recover damages for the drowning of their son Calixtro Cantu, Jr. ("Calixtro"). Specifically, they alleged in their Second Amended Original Petition, their trial pleading:

### IV.

This action is proper pursuant to Title 5 of the Texas Civil Practice and Remedies Code, Subchapter B, Section 101.-021(2), wherein governmental units in the state, such as the Defendants herein, are liable for personal injury and death so caused by a condition or use of tangible personal or real property if the govern-

mental unit would, were it a private person, be liable to the claimant according to Texas law. Section 101.025(a) of the above referenced code states that a governmental unit's sovereign immunity is waived and abolished to the extent of liability created by Chapter 101. Section 101.025(b) further states that a person having a claim under this chapter may sue a governmental unit for damages allowed by Chapter 101.

### V.

On or about April 12, 1988, Plaintiff (sic) Calixtro Cantu, Jr., accompanied by two smaller friends, was playing in the vicinity of the resaca located between Robertson and Zaragosa Streets. While playing there, Plaintiff (sic) went to the edge of the resaca where the floodgates on Robertson Street are located, fell into the waters of the resaca, and drowned shortly thereafter....

The Cantus further alleged that on the date and occasion in question the City and the District were each negligent in their failures to take action to protect the public from the danger posed by the premises in question after having notice of prior reported drownings in the resaca in question, and that each of them negligently violated the duty owed to the deceased under Tex.Civ. Prac. & Rem.Code § 101.022 (Vernon 1986) in the following respects, each of which was a proximate cause of injuries and damages suffered by plaintiffs:

a. Failure to warn the public of the danger posed to children playing at the edge of the resaca; and

b. failure to place needed barriers at the edge of the resaca where the floodgates are located.

As a result of the alleged negligent acts by the defendants, the Cantus claimed that they, the surviving parents of Calixtro, who was seven years of age at the time of his death, were entitled to recover damages for the pain, suffering and mental anguish

---

* Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

Calixtro suffered, and damages they suffered as a result of their son's death.

The City defended on the grounds it was immune from liability and filed a cross action for indemnity against its codefendant, the District. The Cantus settled with the District before trial and the cause against the District was severed from the cause against the City. The order of severance also allowed the City to submit the District's negligence to the jury.

The trial court overruled the City's motion for a directed verdict at the close of the Cantus' case, at which point the City rested. The case was submitted to the jury on written questions to which the City objected. The jury found in favor of the Cantus and awarded $50,000 in damages.

This appeal raises similar contentions to those raised in the City's motions for directed verdict, for entry of judgment, and for judgment notwithstanding the verdict. The City challenges the court's charge, the verdict and the judgment because the evidence submitted to the jury could not predicate any waiver of the City's immunity from liability under the Texas Tort Claims Act.

The case proceeded to trial on the jury docket on April 9 and 10, 1990. The City moved for a directed verdict at the close of the Cantus' case based on the following contentions: there were neither pleadings nor evidence to support a claim for willful or wanton conduct or gross negligence which would create liability pursuant to Section 101.022 of the Tort Claims Act, there was neither pleading nor evidence of any "special" defect that would create a higher, i.e., invitee-level, duty in the City, and that the Cantus had not established that the City owned, occupied, or controlled the premises where Calixtro drowned, or created the defect which allegedly caused the death.

The court refused to instruct the jury to return a directed verdict. The trial court also overruled the City's numerous objections to the questions submitted to the jury during the charge conference.

In response to the questions presented in the Court's charge, the jury found there was a condition on the City's premises that presented an unreasonable risk of harm to the Cantus' son; the City had actual knowledge of the condition, but the child did not, and the City failed to warn the child of the condition; the City's failure to warn was a proximate cause of the death, although the manner in which the City maintained the premises was not; the City's maintenance of the premises was neither willful nor wanton conduct, nor did it constitute gross negligence. In response to Questions 8 and 9, the jury attributed fifty percent of causation to the City, fifty percent to the District, and none to the plaintiff Calixtro Cantu, Sr.

## FACTS

The resaca in question is a reservoir located between West Robinson and West Zaragosa Streets in San Benito, Texas. A bridge on West Robinson Street spans the resaca and the City has a right-of-way for that bridge. The resaca's floodgates are under the bridge. Four large pipes control flow of water. Calixtro's body was found lodged underneath the pipes under the bridge. It is undisputed that the District owns, operates and maintains the resaca and its floodgates.

The District also owns the land in the recreation area that abuts the resaca, but leases it to the City for use as a park. The park is free and open to the public. The City maintains the park. The City's lease starts at the water's edge and extends to the meander line boundaries of the park. According to Mr. Magowick, a witness who was called by the Cantus, the District's responsibility begins at the edge of the water and extends into the resaca and the City's responsibility extends from the edge of the water on the westerly line of the resaca meander line or resaca property line. The street and bridge level of the park is much higher than the area of the park near the water's edge, and the approach to the bank of the resaca from the street near the bridge is quite steep. This bank is close to the floodgate pipes.

It is undisputed that Calixtro, a seven-year-old child of the Cantus, drowned in the waters of the resaca. He had accompanied his father on a visit to the home of his father's friend, Jesus Bolado, who lived a short distance from the resaca. After the two men had visited a short while, Mr. Bolado's six-year-old son, Jaime, called other friends, and the boys went outside to play at "Charlie's" house. The boys climbed down to the resaca by the steep bank, via a path referred to by Jaime as a "tunnel," which was near the West Robinson Street Bridge. The only details about how the drowning happened came from the only witness, Jaime, or descriptions of the event conveyed by other persons to either Calixtro Cantu, Sr. or the investigating officer.

Jaime testified that he, Calixtro, and two other boys left Charlie's house and proceeded along a narrow path down the slope to the flat land that bordered the resaca. He went "first" down the path and as he "got near the water," Calixtro was in the middle of the path. Calixtro wanted to get what they thought was a turtle (which was in the water and was, in reality, a bottle) when he, Jaime, pushed Calixtro and "he went down." Jaime, in response to specific questions relating to his pushing Calixtro, testified:

Q. Jaime, how did you push him?
A. Just like that (indicating).
Q. Were you going down the slope, down the path when you pushed him?
A. Yes.
Q. Or were you already down here on the flat ground?
A. I was already on the flat ground on the water.
Q. You were close to the water?
A. Yes.
Q. Did you know that he was going to fall into the water after you pushed him, Jaime?
A. Yes.
Q. You knew he was going to fall in?
A. Yes.
Q. How did you know that?
A. Because once you push somebody, he falls down.

Q. Did you know he was going to hurt himself?
A. Not that. Well, I think he wasn't because I was barely six years old. I didn't know he was going to hurt himself.

\* \* \* \* \* \*

The City did not call any witnesses.

## MUNICIPALITY LIABILITY

There are only limited circumstances under which a city can be held liable for wrongful death damages pursuant to the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.001 *et seq.* (Vernon 1986). The Cantus relied on Subchapter B of the Act ("Tort Liability of Governmental Units"), specifically, Tex.Civ.Prac. & Rem. Code Ann. §§ 101.021(2), 101.022, and 101.-025(a) and (b).

■ Section 101.025 of the Tort Claims Act establishes the following threshold premise: a governmental entity has sovereign immunity to suit and waives that immunity only if liability arises under the Act. *See generally, Poncar v. City of Mission,* 797 S.W.2d 236, 239 (Tex.App.—Corpus Christi 1990, no writ). According to the Texas Supreme Court, the statute does not create new duties, but simply waives the common-law doctrine of governmental immunity for the instances specified in the statute. *City of Denton v. Van Page,* 701 S.W.2d 831, 835 (Tex.1986). *Van Page* clarifies that a plaintiff must prove the existence and violation of a legal duty in order to impose liability under the Act, and in the absence of this showing, a city's sovereign immunity remains intact.

■ Section 101.021(2) governs claims against a governmental entity for personal injury or death. Pursuant to § 101.021(2), a Texas governmental entity may be liable for personal injury or death that is caused by a condition of real property "if a private person would be liable under Texas law." The Act further specifies, however, that if a claim arises from a premise defect, the duty owed the claimant is the same duty that a private person would owe a licensee

on private property unless the claimant paid for the use of the premises. Tex.Civ. Prac. & Rem.Code Ann. § 101.022(a). The basic duty owed licensees is not to injure them willfully, wantonly, or through gross negligence. *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974). This duty encompasses the duty to warn or make reasonably safe if the city has actual knowledge, but only if the claimant does not. *Tennison*, 509 S.W.2d at 562; *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 563 (Tex.1976).

■ Actual knowledge embraces those things which a reasonably diligent inquiry and means of information at hand would have disclosed. *City of Austin v. Cooksey*, 561 S.W.2d 874, 882 (Tex.Civ.App.—Eastland), *rev'd on other grounds*, 570 S.W.2d 386 (Tex.1978). Thus, even if the city has actual knowledge of a dangerous condition, it has no duty to warn or make the danger reasonably safe if the claimant has actual knowledge of the danger as well. *Lower Neches Valley Auth.*, 536 S.W.2d at 564.

Subsection (b) of § 101.022 of the Tort Claims Act recognizes a unique category of dangerous conditions, denominated "special" defects, to which the "licensee" rule of duty does not apply. Tex.Civ.Prac. & Rem.Code Ann. § 101.022(b) lists illustrative examples. While the list in the statute is not exhaustive, *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex.1978), recent case law suggests that a "special" defect, within the meaning of Subsection (b) of § 101.022, necessarily involves a highway, road or street. This was the holding in *Payne v. City of Galveston*, 772 S.W.2d 473, 477 (Tex.App.—Houston [14th Dist.] 1989, writ denied). *Payne* also suggests that a special defect precludes actual knowledge and that there can be no "special" defect if a danger is open and obvious and observable by anyone. *Payne*, 772 S.W.2d at 477; *see Blankenship v. County of Galveston*, 775 S.W.2d 439, 442 (Tex. App.—Houston [1st Dist.] 1989, no writ). *Blankenship* defines the duty owed for "special" defects as that owed an invitee, and clarifies that classification of a defense of a defect as "premise" or as "special" is a question of law for the court. *Blankenship*, 775 S.W.2d at 441–42.

In the very recent case of *State Dept. of Highways v. Payne*, No. C–9343, 34 Tex. Sup.Ct.J. 793, 1991 WL 175208 (Sept. 11, 1991) (not yet reported), the Supreme Court distinguished a "premises defect" from a "special defect" under the Texas Tort Claims Act. In that case, the plaintiff, while walking from his house to a deer blind, stepped off of a culvert while crossing a public road, fell into a drainage ditch, and sustained personal injuries. Although the plaintiff was familiar with the culvert, he claims that he did not see where it ended because vegetation obscured it and a reflective marker was missing. The trial court determined that the culvert was a special defect and instructed the jury that the State had the "duty to either warn of a dangerous condition or to make such a dangerous condition reasonably safe." The jury found that Payne's injuries were caused 60% by the negligence of the State and 40% by his own negligence. Judgment was rendered for Payne. The Court of Appeals affirmed and held that the culvert was a special defect as a matter of law. The Supreme Court disagreed and reversed the judgments of the lower courts and rendered judgment that the plaintiff take nothing. In doing so, the Supreme Court said:

The State's duty in this case is determined under section 101.022 of the Tort Claims Act, which provides:

(a) If a claim arises from a *premises defect*, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section shall not apply to the duty to warn of *special defects* such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.
Tex.Rev.Civ.Prac. & Rem.Code § 101.022 (emphasis added).

Where a premise defect exists, the State's duty is that owed by a private

person to a licensee on private property, which is the duty not to injure the licensee by willful, wanton or grossly negligent conduct. *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974). The exception to this rule is that if the licensor has knowledge of a dangerous condition, *and the licensee does not,* the licensor has a duty either to warn the licensee or to make the condition reasonably safe. *Id.* Where there is a special defect, however, the State has "the duty to warn as in the case of the duty one owes to an invitee." *Harris County v. Eaton,* 573 S.W.2d 177, 180 (Tex.1978).

\* \* \* \* \* \*

Because the issue of whether a condition is a "premise" or "special" defect is one of duty and involves statutory interpretation, it is for the court to decide. *Eaton,* 573 S.W.2d at 179–80. *See also Blankenship v. County of Galveston,* 775 S.W.2d 439, 441–42 (Tex.App.—Houston [1st Dist.] 1989, no writ). The courts below correctly recognized this principle, but they incorrectly determined the status of the culvert.

Most property defects are premises, not special defects, for which the State owes the public the limited duty normally owed a licensee. The exception for special defects applies only to defects that resemble excavations or obstructions on highways, roads, or streets. Tex.Civ. Prac. & Rem.Code § 101.022(b); *see Eaton,* 573 S.W.2d at 179.

## POINTS OF ERROR AND THE STANDARDS OF REVIEW

The City presents three points of error. It contends in its first and second points that the trial court erred in rendering judgment on the jury verdict and in denying the City's motions for directed verdict and judgment notwithstanding the verdict because 1) there is no evidence that the City controlled the resaca in which Calixtro drowned, and 2) there is no evidence that the status of Calixtro exceeded that of a licensee. The City further asserts in its third point that the trial court erred in rendering judgment on the jury's verdict

and in denying its motions for directed verdict and judgment notwithstanding the verdict because the Cantus did not plead or prove that the resaca was a "special" defect.

### 1. The Directed Verdict

■ To complain on appeal about a trial court's refusal to grant a directed verdict, the record must reflect that the defendant presented the motion and that the court ruled on the motion before the jury returned a verdict. *Commercial Standard Ins. Co. v. Southern Farm Bureau Casualty Ins. Co.,* 509 S.W.2d 387, 391 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.). The City met that burden in this case.

■ A directed (instructed) verdict is proper when: 1) a defect specifically indicated in an opponent's pleading makes it insufficient to support a judgment; 2) certain fact propositions are true which, under the substantive law, either establish the right of the movant or negate the right of the opponent, to judgment; or 3) the evidence is insufficient to raise an issue about one or more fact propositions that must be established for the opponent to be entitled to judgment. *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 932 (Tex.App.— San Antonio 1989, writ denied). An instructed verdict directs the inquiry whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). The appropriate inquiry when the trial court refuses to grant a directed verdict is, therefore, whether the plaintiff's evidence raises an issue for the jury. *MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334, 337 (1944); *Anbeck Co. v. Zapata Corp.,* 641 S.W.2d 608, 617 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

### 2. Judgment Notwithstanding the Verdict

■ Upon motion and reasonable notice, a trial court may render judgment notwithstanding the verdict (n.o.v.) if a directed verdict would have been proper.

*Murray Corp. v. Brooks,* 600 S.W.2d 897, 900 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Dittberner v. Bell,* 558 S.W.2d 527, 531 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); Tex.R.Civ.P. 301.

■ Judgment n.o.v. is therefore proper when: 1) a defect specifically indicated in an opponent's pleading makes it insufficient to support a judgment; 2) certain fact propositions are true which, under the substantive law, either establish the right of the movant or negate the right of the opponent, to judgment; 3) the evidence is insufficient to raise an issue on one or more fact propositions that must be established for the opponent to be entitled to judgment. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex. 1986).

It is readily apparent that standards governing motions for directed verdict and judgment notwithstanding the verdict follow the same three-part test. *See Navarette,* 706 S.W.2d at 309; *Rudolph,* 763 S.W.2d at 68. The Court of Appeals reviews the first two questions de novo; the legal sufficiency standard of review governs the third evidentiary question. *See Navarette,* 706 S.W.2d at 309.

■ When reviewing evidentiary challenges to the trial court's failure to grant either a directed verdict or a motion notwithstanding the verdict, the Court of Appeals reviews the record in the light most favorable to the jury's findings, by considering only the evidence and reasonable inferences that support the finding and rejecting all evidence and inferences contrary to the finding. *Navarette,* 706 S.W.2d at 309 and *Williams v. Bennett,* 610 S.W.2d 144, 145 (Tex.1980) (judgment n.o.v.); *Collora,* 574 S.W.2d at 68 and *Follett,* 180 S.W.2d at 337 (directed verdict). As hereafter detailed, this is also the same standard that governs challenges to the legal sufficiency of the evidence to support the jury's findings when the appealing party did not have the burden of proof. *See, e.g., Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex. 1990); *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 364–68 (1960).

### 3. No Evidence

■ In reviewing "no evidence" points, the Court of Appeals will consider only the evidence and inferences tending to support the jury verdict and disregard all evidence to the contrary and will affirm the judgment if there is any evidence of probative value to support the verdict in a jury-tried case. *International Bank, N.A. v. Morales,* 736 S.W.2d 622, 624 (Tex.1987); *King v. Bauer,* 688 S.W.2d 845, 846 (Tex. 1985); *Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286, 289 (1951). The standard to be applied to "no evidence" is whether such evidence, either direct or circumstantial, amounts to more than a mere scintilla. If more than a scintilla of evidence supports the finding, the challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). Applying these principles, the Court must first determine if there is evidence of probative value to support the trial court's judgment. If a no evidence point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for appellant. *United States Fire Ins. Co. v. Carter,* 473 S.W.2d 2, 3 (Tex.1971); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

### DISPOSITION OF THE POINTS OF ERROR

■ In the case at bar, as before noted, the Cantus alleged that the City "negligently violated the duty owed to the deceased under Sections 101.022 of the Texas Civil Practice and Remedies Code" in that it failed "to warn the public of the danger posed to children playing at the edge of the resaca," and failed "to place needed barriers at the edge of the resaca where the floodgates are located."

Section 101.022 reads:

Duty Owed: Premise and Special Defects

(a) If a claim arises from a premise defect, the governmental unit owes to the

claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

Thus, the allegations in the Cantus' trial petition make this a "premises" defect case not a "special" defect case.

The Cantus did not allege any facts in their trial petition which would impose liability pursuant to Subsection (b) of Tex.Civ. Prac. & Rem.Code Ann. § 101.022. Nor does their proof suggest that the park premises maintained by the City amounted to a "special" defect under clarifications established by the *Payne v. City of Galveston* and *Blankenship* cases.

Question No. 1 inquired of the jury:

On the occasion in question was there a condition on the City's premises that presented an unreasonable risk of harm to Calixtro Cantu, Jr.?

Question No. 4 inquired of the jury:

Did the City fail to warn Calixtro Cantu, Jr. of such condition?

The jury answered "Yes" to both questions.

When both Questions 1 and 4 are considered together, it is apparent that they presented inquiries relating to "special" defects. In fact, when counsel for the City moved for a directed verdict and told the court that he didn't "believe there is any way to submit this case under the pleadings and proof," the court replied:

I don't agree with you. There has to be a special defect that if the plaintiff can convince the jury that there was an unreasonably dangerous condition of which the city had knowledge and the child did not, it will go on negligence....

Counsel for the City also objected to the submission of Questions 1 and 4. Since the Cantus did not plead "special" defect, it

was error to submit Questions No. 1 and No. 4 to the jury. As stated, the Cantus relied on § 101.021(2), § 101.022, and § 101.025(a) and (b) of the Texas Tort Claims Act. The Cantus' § 101.022 (premises liability) allegations in their trial petition did not identify any alleged defect as a "special" defect under § 101.022(b). The omission is material, since a plaintiff must prove, and necessarily allege, the legal duty owed in order to impose a waiver of sovereign immunity. *See Van Page,* 701 S.W.2d at 835. The third point of error is sustained.

It is undisputed under the evidence in this case that the danger to Calixtro, the Cantu's child, was the resaca itself, rather than the park premises leased by the City. Although the Cantus' trial petition alleged that both the City and the District controlled the resaca, the evidence adduced during trial conclusively established that only the District owned, controlled, operated and maintained it.

In *Vela v. Cameron County,* 703 S.W.2d 721 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), the facts of which are very similar to the instant case, this Court held that the dangerous waters were beyond the control of the governmental entity (Cameron County), notwithstanding that entity's control over the area adjoining the Gulf's waters. In that case, Edward Vela drowned in the Gulf of Mexico following a family picnic in a park controlled by Cameron County on South Padre Island adjoining the Gulf of Mexico. Edward's parents brought suit to recover damages for the death of their son on the ground that the County was negligent in 1) failing to post signs in the park warning park users of the dangerous undertows in the Gulf waters, and 2) failing to provide lifeguards and emergency medical services in the park area. Summary judgment in favor of the County was granted by the trial court. This Court affirmed, and in doing so, stated:

[T]his Court held in *Cameron County v. Velasquez,* 668 S.W.2d 776 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.) that the duty of the County extends only over that area that it controls, which is

between the vegetation line and that of mean low tide. *Velasquez* at 781. Before a duty may be imposed, it is generally necessary that the injury occur on the premises owned or occupied by the defendant. *Id.;* See *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex.1983); *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975). Because neither the accident in question occurred on "premises" owned, occupied or controlled by the County, nor was the hazard located on its premises, the County owed no legal duty to warn Vela of the dangers off its premises.

*Id.* at 723. The ruling in *Vela* applies to the cause now before this Court.

In order to predicate a duty to warn of hazards under a theory of premises liability, it is required that the governmental entity own, occupy or control the premises where the incident made the basis of suit occurred. *Marshbank v. Austin Bridge Co.,* 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The drowning in the case now before us did not occur on premises owned, occupied or controlled by the City.

As already noted, the duty of a governmental entity to warn licensees of dangers or hazards arises only if the entity had actual knowledge thereof and the injured party did not. Actual knowledge embraces those things which a reasonably diligent inquiry and means of information at hand would have disclosed. *Cooksey,* 561 S.W.2d at 882. Thus, even if the City has actual knowledge of a dangerous condition on its premises (the park), it did not have a duty to warn or make the danger reasonably safe if Calixtro had actual knowledge of the danger as well. *Lower Neches Valley Authority,* 536 S.W.2d at 564. It is conclusively established by the evidence that Jaime Bolado, a six-year-old child and the only eye-witness to the drowning, was aware of the danger of drowning in the resaca. Nothing in the record suggests that Calixtro did not also have actual knowledge of the danger incurred in approaching the edge of the resaca. The danger of drowning in the resaca, owned, controlled, and operated by the District, at

the place where Calixtro drowned, was open and obvious as a matter of law. It is undisputed that the slope near the place where the drowning occurred was very steep, and that the path used by the boys in their approach to the resaca was narrow and in a condition to the extent that Jaime referred to it as "the tunnel." The path was not the normal means of entering the park, and a Mr. Rodriguez shouted to the boys to get away from the water's edge when he saw them near the resaca. Therefore, if the danger of approaching the resaca was apparent to Jaime, a six-year-old child, then there is no reason to assume or believe that Calixtro, a seven-year-old child, did not have actual knowledge of the same danger. The danger existing was apparent to all, including Calixtro, who had access to the same information as did Jaime and Mr. Rodriguez. *See Payne v. Galveston,* 772 S.W.2d at 477; *Cooksey,* 561 S.W.2d at 882.

We hold that the maintenance of the park by the City and the fact that the park adjoined the dangerous waters of the resaca was neither a "special" defect nor a "premises" defect as a matter of law. We further hold that Calixtro was a mere licensee, and that neither he nor his parents paid for the use of the park. The City did not have any duty to warn Calixtro of the dangerous condition posed by the waters of the resaca; Calixtro had to be aware of the open and obvious danger present in an area outside of the park itself. The City did not have any duty to place barricades or warning signs along the bank of the resaca. Therefore, any recovery of damages by the Cantus is precluded by the Doctrine of Governmental Immunity and the Texas Tort Claims Act. The City's first and second points of error are sustained.

The judgment of the trial court is reversed and judgment is here rendered that Calixtro Cantu, Sr. and Maria Cantu, appellees, in this Court, take nothing in their suit against the City of San Benito, appellant in this Court.

Concurring opinion by SEERDEN, J.

SEERDEN, Justice, concurring.

I agree that the judgment should be reversed and rendered; however, my decision

is based solely on my belief that appellees failed, as a matter of law, to establish a duty on the part of the city. *State Dep't of Highways & Pub. Transp. v. Payne*, 34 Tex.Sup.Ct.J. 793, —— S.W.2d —— (Sept. 11, 1991), establishes that the issue of whether a condition is a "premises" or "special" defect is one of duty and involves statutory construction. As such, it is therefore a question of law for the court to decide rather than a fact question for the jury. The facts in this case show that the city maintained a park area next to a resaca. The bank leading to the resaca was steep and was not maintained in as neat a condition as the park. There was no evidence that anything had been done to the bank to make it any more dangerous than any steep bank next to a body of water; therefore, any defect which existed would be a "premise" rather than a "special" defect. There is no evidence or finding that the incident in question was caused by any willful, wanton or grossly negligent conduct on the part of the City. For this reason, I would reverse the judgment and render judgment that appellees take nothing.

I consider the remainder of the legal and factual discussion by the majority unnecessary and do not adopt either the factual recitation or legal reasoning relating to things other than the duty of the appellant, City of San Benito.