Affirmed and Memorandum Opinion filed November 6, 2007








Affirmed and Memorandum Opinion filed November 6, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00064-CV

____________

 

ALICE SMITH, INDIVIDUALLY AND ON
BEHALF OF DONALD RAY SMITH, DECEASED, Appellant

 

V.

 

TEXAS DEPARTMENT OF CRIMINAL
JUSTICE,
Appellee

 



 

On Appeal from the 412th
District Court

Brazoria County, Texas

Trial Court Cause No. 35957

 



 

M E M O R A N D U M   O P I N I O N

In this
wrongful death case, appellant challenges an order granting a plea to the
jurisdiction in favor of the Texas Department of Criminal Justice, appellee. We
affirm.

I. 
BACKGROUND








Donald
Smith (Adecedent@), was an inmate with the Texas
Department of Criminal Justice (ATDCJ@) and was assigned to a crew
responsible for repairing power lines for the State.  Decedent was trained and
accredited to work on power lines while he was incarcerated at TDCJ.  On May 6,
2005, decedent was called out as part of a crew to repair a downed power line
in a horse pasture on TDCJ=s property.  Decedent=s supervisor, Clifford Guant, arrived
at the scene around 5:00 p.m. to assess the damaged power line.  The rest of
the crew, which included supervisor Anthony Allen, inmate Lemons, and decedent,
arrived around 5:50 p.m. in trucks equipped with the supplies necessary to
repair the downed line.  When the crew arrived, they were informed that the
power lines were still energized and were told not to go near the line.  The
power line was hanging three feet off the ground in the open pasture, about 40
feet away from where the trucks were parked. 

 The
crew was then told that the power would be shut off, and they began to unload
equipment from the truck.  Supervisor Guant notified the TDCJ unit that they
were cutting the power.  He then directed inmate Millard, another crew member,
to pull the power switches.  Decedent began unspooling wire from the truck into
the open pasture.  At this time, supervisor Allen turned his back on the crew
to take a personal phone call.  While unspooling the wire from the truck,
decedent backed into the dangling power line that was still energized with 7200
volts of power.  Decedent received an electric shock and, as a result, died
three days later.  

Alice
Smith, decedent=s mother, brought this suit individually and on behalf of his
estate for wrongful death and survival damages.  The trial court granted TDCJ=s plea to the jurisdiction,
dismissing the case with prejudice for lack of subject matter jurisdiction on
the ground that appellant failed to allege facts demonstrating waiver of TDCJ=s immunity from suit under the
relevant provisions of the Texas Tort Claims Act (the AAct@).   Appellant raises two issues in
this appeal: (1) the trial court erred in dismissing the case because appellant=s evidence raised a fact issue as to
whether decedent had actual knowledge of the dangerous condition, a fact that
would waive TDCJ=s sovereign immunity; and (2) TDCJ was not entitled to an
exclusion under the Act because the method by which TDCJ supervised decedent=s work on the high voltage lines
should be characterized as implementing policy, not a discretionary function of
formulating policy. 








II. 
ANALYSIS 

A. 
Standard of Review

A plea
to the jurisdiction challenges the trial court=s authority to determine the subject
matter of the action.  Tex. Dept. of Transp. v. Jones, 8 S.W.3d 636,
638-39 (Tex. 1999).  Governmental immunity from suit defeats subject matter
jurisdiction.  Dallas Area Transit v. Whitley, 104 S.W.3d 540, 542 (Tex.
2003).  Whether the trial court had subject matter jurisdiction is a question
of law that we review de novo.  Tex. Natural Resource Conservation
Comm=n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Mogayzel v. Tex. Dept.
of Transp., 66 S.W.3d 459, 463 (Tex. App.CFort Worth 2001, pet. denied).  In
performing this review, we do not consider the merits of plaintiff=s case, but focus instead on the
plaintiff=s pleadings and the evidence pertinent to the jurisdictional inquiry.  County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).  We construe the
pleadings liberally in favor of conferring jurisdiction.  Tex. Dept. of
Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam).  The
pleadings are to be construed in favor of the plaintiff, and the court must
look to the pleader=s intent.  Brown, 80 S.W.3d at 555; Tex. Dept. of
MHMR v. Lee, 38 S.W.3d 862, 865 (Tex. App.CFort Worth 2001, pet. denied). 
Nevertheless, a waiver of immunity must be clear and unambiguous.  Tooke v.
City of Mexia, 197 S.W.3d 325, 332-33 (Tex. 2006).  In sum, we determine
whether the plaintiff has pleaded a claim for which a governmental unit has
waived immunity by reading the pleadings broadly and the alleged waiver
narrowly.  

Here,
the parties do not dispute that TDCJ is a governmental unit under the Act. 
Therefore, we will review appellant=s pleadings and jurisdictional
evidence to determine if her claims fall within a waiver of immunity under the
Act.  








B. 
Waiver of Immunity Under the Act

In
appellant=s first issue, she alleges that the trial court erred in dismissing the
case because her evidence raised a fact issue as to whether TDCJ waived
immunity under the Act.  Specifically, appellant argues that TDCJ waived its
sovereign immunity under section 101.021(2) because: (1) the condition of the
premises presented an unreasonable risk of harm to decedent, a licensee; (2)
TDCJ, the landowner, knew of the dangerous condition; (3) decedent did not have
actual knowledge of the hazardous condition; (4) TDCJ failed to exercise
ordinary care to protect decedent from danger; and (5) TDCJ=s failure to exercise ordinary care
was the proximate cause of decedent=s death.  See State Dept. of
Highways & Public Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). 
To support this argument, appellant relies on the deposition testimony of crew
members stating that (1) decedent was called out by TDCJ to repair a downed
power line energized with 7200 volts of power on its property; (2) decedent was
told that the power was going to be cut by inmate Millard; (3) decedent waited
a sufficient amount of time before backing into the downed power line; (4)
inmate Millard only pulled the power on two switches; and (5) supervisors Allen
and Guant knew that one line remained energized but failed to warn decedent. 
According to appellant, this evidence is sufficient to overcome TDCJ=s plea to the jurisdiction because it
raises a fact issue as to whether TDCJ waived immunity under section 101.021(2)
of the Act. 








            Under the
doctrine of sovereign immunity, a governmental unit is immune from suit and
liability in the absence of a constitutional or statutory provision creating
such liability.  See Medrano v. City of Pearsall, 989 S.W.2d 141, 143-44
(Tex. App.CSan Antonio 1999, no pet.).  The Act creates a limited waiver of
sovereign immunity.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005).  In order for
immunity to be waived under the Act, the claim must arise under one of three
specific areas of liability for which immunity is waived, and the claim must
not fall under one of the exclusions from waiver.  Medrano, 989 S.W.2d
at 144.  The three specific areas of liability for which immunity has been
waived are (1) injury caused by an employee=s use of a motor-driven vehicle, (2)
injury caused by a condition or use of tangible personal or real property, and
(3) claims arising from premise defects.  Tex.
Civ. Prac. & Rem. Code Ann. '' 101.021(1), 101.021(2), 101.022
(Vernon 2005); Scott v. Prairie View A & M Univ., 7 S.W.3d 717, 719
(Tex. App.CHouston [1st Dist.] 1999, pet. denied).  Appellant=s pleadings below and appeal before
this Court does not reflect that this suit was prosecuted on an ordinary
premise defect theory under section 101.022.  See City of Baytown v.
Townsend, 548 S.W.2d 935, 939 (Tex. App.CHouston [14th Dist.] 1977, writ ref=d n.r.e.).  Therefore, appellant=s only claim to waiver in the instant
appeal is grounded in an injury arising from the condition of real property
under section 101.021(2).  We now examine the pleadings and jurisdictional
evidence appellant offers to support her jurisdictional argument under
101.021(2). 

            If decedent=s injury arose out of the condition
of TDCJ=s property, it owed decedent the same
duty a private landowner owes a licensee.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2).  An owner, such as TDCJ,
must avoid injuring a licensee by willful, wanton, or grossly negligent
conduct.  See Payne, 838 S.W.2d at 237.  However, when the owner has
actual knowledge of a dangerous condition and the licensee does not, the owner=s duty is to warn the licensee or
make the premises reasonably safe. Id.  The elements of proof required
to establish liability in the instant case are (1) a condition of the premises
created an unreasonable risk of harm to the licensee; (2) the owner had actual
knowledge of the condition; (3) the licensee did not have actual knowledge of
the condition; (4) the owner failed to exercise ordinary care to protect the
licensee from danger; and (5) the owner=s failure was a proximate cause of
injury to the licensee.  See id.  








TDCJ
does not dispute the first two elements of liability.  However, the third
element, that the licensee did not have actual knowledge of the dangerous
condition, is key to appellant=s first issue.  Actual knowledge embraces those things which
a reasonably diligent inquiry and means of information at hand would have
disclosed.  City of San Benito v. Cantu, 831 S.W.2d 416, 425 (Tex. App.CCorpus Christi 1992, no writ); see
also Weaver v. KFC Management, Inc., 750 S.W.2d 24, 26-27 (Tex. App.CDallas 1988, writ denied) (stating
that a licensee is also imputed with knowledge of those conditions perceptible
to him, or the existence of which can be inferred from the facts within his
present or past knowledge).  We must now examine the pleadings and
jurisdictional evidence to determine whether decedent had actual knowledge of
the hazard.  

The live
power line was hanging three feet from the ground in an open horse pasture when
decedent and the rest of his crew arrived.  The crew was told that because the
downed power line was still energized, they needed to stay away from it.  This
shows that each member of the crew, including decedent, had actual knowledge of
the danger.  Even if decedent believed that the power had been cut after he had
actual knowledge of the danger, as alleged by appellant, appellant cites no
controlling authority that allows an injured party to subsequently lose actual
knowledge once that party has been made award of the dangerous condition.   See
Smith v. Radam, Inc., 51 S.W.3d 413, 415-16 (Tex. App.CHouston [1st Dist.] 2001, no pet.)
(stating that a reviewing court will not conduct an independent review of the
record and applicable law to determine whether error complained of occurred
when appellant fails to cite any controlling authority on that point of
error).  There were no affirmative representations of fact made by TDCJ that it
was safe for decedent to make contact with the downed power line.  Instead,
decedent assumed that the condition of the property became safe within a matter
of one minute after being informed that the power would be cut off.  In
fact, the usual and customary safety operation employed by TDCJ prior to
working on a downed power line was to (1) notify the unit affected by the
outage that power would be shut down, (2) cut the power, (3) check the power
with a meter to verify the power was down, and (4) ground the conductors.  On
the day in question, decedent did not follow this procedure. 








Crew
members testified that they knew the downed line was still energized.  If the
danger of approaching the downed power line was apparent to supervisors Guant
and Allen and inmate Lemons, then there is no reason to assume or believe that
decedent, who was a trained lineman and had access to the same information, did
not have actual knowledge of the same danger.  The conspicuousness of the
danger was apparent to all, including decedent.  See Cantu, 831 S.W.2d
at 425.  Therefore, TDCJ was relieved of its duty to further warn or make safe
the condition of the real property.  Id.  Because decedent had actual
knowledge of the dangerous condition, and the record is void with evidence of
willful, wanton, or grossly negligent conduct on behalf of TDCJ, we find that
TDCJ did not breach its duty to decedent under section 101.021(2).  Therefore,
TDCJ did not waive its sovereign immunity under the Act.  We overrule appellant=s first issue.

Having
concluded that TDCJ=s sovereign immunity was not waived, we do not reach
appellant=s second issue addressing whether TDCJ=s conduct fell under one of the Act=s exclusions from waiver.  Accordingly, we
affirm the  trial court=s judgment.

 

 

                                                                                                                         

/s/      Adele Hedges

Chief Justice

 

 

 

                                                              

Judgment rendered
and Memorandum Opinion filed November 6, 2007.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).