William L. HUNTER d/b/a H & H Oil Services, Inc., Appellant,

v.

NATIONAL COUNTY MUTUAL FIRE INSURANCE COMPANY, Appellee.

No. 05–84–00240–CV.

Court of Appeals of Texas, Dallas.

Feb. 20, 1985.

Richard L. Turner, Mesquite, for appellant.

Jack D. Sides, Jr., Dallas, for appellee.

Before CARVER, SPARLING and WILLIAMS [1], JJ.

CARVER, Justice.

Our opinion of January 17, 1985, is withdrawn, and the following corrected opinion substituted therefor:

William L. Hunter appeals a judgment *non obstante veredicto* that he take nothing on his policy claim for vandalism and malicious mischief against National County Mutual Fire Insurance Company. We reverse and render judgment on the verdict of the jury.

It is not disputed that Hunter's 1973 International dump truck was insured against the risk of vandalism and malicious mischief when its diesel engine failed in June 1980. Witnesses testified that the truck was being used in an extremely dusty worksite when it became immobile in a dirt pit and did not have sufficient power to drive out. The truck was towed to a repair shop where National's adjuster in-

---

**1.** Chief Justice, Fifth Court of Appeals (Retired), sitting by designation pursuant to TEX.REV. CIV.STAT.ANN. art. 1812 (Vernon Supp.1984).

spected the engine; took photographs later admitted into evidence; took a container of engine oil for analysis, and made an examination of the air filter within which, he testified, he discovered a large quantity of dirt.

Hunter's two experts had examined the engine, one expert shortly after the engine failed and the other expert about six months later. They testified at trial that the engine failure and the real damage to the engine was caused by dirt that came through the oil filler pipe directly into the oil and produced abrasion of all engine parts lubricated by the oil. National's adjuster and its two expert witnesses agreed that dirt was the cause of the engine's damage, but testified that its source was through the improperly maintained air filter which was exposed to the unusually dusty workplace.

The jury responded to special issues finding: (1) that the damage was caused by malicious mischief as defined in the charge; (2) that immediately prior to the damage the truck had a value of $17,500; (3) that immediately after the damage the truck had a value of $5,000; (4) that the reasonable cost of repairs was $10,000; and (5) that a reasonable attorney's fee was $4,500. The trial court granted judgment to National notwithstanding the jury's verdict, and Hunter appeals.

Hunter urges that the trial court was in error in concluding that the record did not support the jury's finding of malicious mischief. Hunter points out that the real dispute in this case is the source of the dirt in the lubricating oil system. Further, all witnesses at least agree that the very nature of the engine permits only two sources of the dirt, the air filter system and the oil filler pipe. Hunter and his witnesses negate the air filter system as the source of the dirt by pointing out that the truck was operating well up to a specific point in time and that dirt from the filter system would only enter slowly and would equally, and slowly, reduce the engine's operation. Hunter and his witnesses draw the expert conclusion that the sudden appearance of the dirt, in a large quantity, directly in the lubricating oil infers both "a human agency" and, since no other reason can be perceived for the putting of dirt in an engine, that the human agency acted "deliberately and with malicious intent," the legal essence of vandalism and malicious mischief.

National responds that its witnesses and experts explained that the air filter system was improperly maintained and that the truck was constantly in a dusty atmosphere at the job, with the resulting intake of the dirt subsequently discovered in the oil which damaged the engine. National argues that there is no direct evidence supporting Hunter's theory that the dirt was placed through the oil filler tube by a human agency acting with malice while there is some direct evidence that dirt could, and did, get into the engine through the air filter system because of Hunter's own neglect to keep proper maintenance.

 We find that the sudden appearance, in a short period of time, of a large quantity of dirt directly into the lubricating oil constitutes direct evidence that the dirt came through the oil filler tube. This direct evidence plus the experts' experience that such an amount of dirt could only come by a human agency, supports an inference that such human agency would only have so acted out of malice. If there is some evidence of probative value which supports the jury's finding on an issue, a trial court is not legally authorized to render judgment *non obstante veredicto*. *Arabesque Studios v. Academy of Fine Arts*, 529 S.W.2d 564, 569–70 (Tex.Civ.App.Dallas 1975, no writ). Consequently, we hold that the jury's finding of malicious mischief was supported by the evidence, and the judgment notwithstanding the verdict was in error.

Our holding is supported by the reasoning found in *Pintsopolous v. Home Insurance Company*, 340 Mass. 734, 166 N.E.2d 559 (1960) where a bulldozer suffered a similar breakdown and a quart of dirt or sand was discovered in the lubricating oil. The evidence in *Pintsopolous* raised the same question as presented here; that is,

did the dirt get in via the air filter system without any human agency, or did the dirt get in via the oil filler tube with the intervention of a human agency acting with malice? The court in *Pintsopolous* held, in pertinent part, that:

"The Plaintiffs had the burden of proof of showing that the loss was caused by vandalism, that is, by 'such wanton and malicious acts as are intended to damage or destroy the property insured.' ... [T]he evidence already summarized warranted the jury in concluding that there was greater probability that the quart of sand reached the motor through the oil intake because of intentional human intervention constituting malicious mischief or vandalism than that it came there by an accidental or negligent means or through normal use. The jury could reasonably reach this conclusion from the expert's testimony and the circumstance that the machine suddenly stopped working well on June 25.... The expert's opinion about the possibility of sand reaching the motor, except in one way, was not mere speculation or a guess from subordinate facts.... His opinion related to mechanical facts susceptible of actual knowledge.... It was for the jury to determine what weight was to be given to them."

166 N.E.2d at 560. *Compare New York Underwriters Insurance Company v. Trustees of First Baptist Church*, 603 S.W.2d 378 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.) (insufficient evidence to support finding of malicious mischief). We sustain Hunter's point complaining of the judgment *non obstante veredicto.*

■ Hunter also complains that the trial court denied him the opportunity to offer any evidence of lost earnings. Hunter cites no authority supporting any damages outside the policy-provided measure of damage and we find none. We do find authority to the contrary and overrule this complaint. *See Superior Pontiac Company v. Queen Insurance Company of America*, 434 S.W.2d 340, 342 (Tex.1968); *American General Insurance Company v. Sessions*, 331 S.W.2d 812, 814 (Tex.Civ. App.—Austin 1960, no writ).

■ Upon reversal of a judgment *non obstante veredicto*, it is our duty to render the judgment upon the verdict that the trial court should have entered. *Miller v. Bock Laundry Machine Company*, 568 S.W.2d 648, 652 (Tex.1977). National is only obligated to pay the lesser damage as found between the difference in market value measure and the repair measure as provided in its policy, or $10,000. Hunter is entitled to the reasonable attorneys' fee of $4,500 as found by the jury for trial of the case. Hunter is also entitled to additional fees set in the parties' stipulation of $2,500 if Hunter is successful in this court and another $2,500 if this case is reviewed by our Supreme Court and Hunter is there successful.

Consequently, we reverse the judgment of the trial court and render judgment here that Hunter: (1) recover from National his damages in the sum of $10,000 with interest at the rate of 9% per annum from and after January 17, 1984 (date of erroneous judgment) until paid; (2) recover from National his reasonable attorney's fees in the trial court of $4,500 with interest at the rate of 9% per annum from and after January 17, 1984 until paid; and (3) recover from National his reasonable attorney's fees in this court of $2,500 with interest at the rate of 9% per annum from and after the date of mandate from this court until paid. Further, in the event of review of this judgment by the Supreme Court and if Hunter is there successful, Hunter shall recover from National his reasonable attorney's fee in the Supreme Court of $2,500 with interest at the rate of 9% per annum from and after this Court's mandate after affirmance until paid. Further, Hunter shall recover from National all costs in the trial court and in this Court.

Reversed and rendered.