**KENNECO ENERGY, INC. f/k/a Armada Supply, Inc., Appellant,**

v.

**JOHNSON & HIGGINS OF TEXAS, INC., Appellee.**

No. 01–92–00768–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 11, 1995.

Rehearing Overruled Jan. 25, 1996.

256

George E. Pletcher, Richard P. Hogan, Jr., Houston, for appellant.

Stephen G. Tipps, Houston, Bob E. Shannon, Austin, for appellee.

Before O'CONNOR, HEDGES and DUGGAN, JJ.

## OPINION

LEE DUGGAN, Jr., Justice.*

We grant appellant's motion for rehearing and deny the appellee's motion for rehearing en banc. We withdraw our opinion of January 27, 1995, and substitute this opinion in its stead.

This appeal involves the preclusive effect of a prior New York federal court judgment upon a Texas district court action under the doctrines of res judicata and collateral estoppel. The appeal also raises issues regarding the statute of limitations and evidentiary sufficiency. We reverse the trial court's judgment n.o.v. and render judgment on the verdict with modifications of the amount of damages, the applicable interest rate, and the accrual date.

Johnson & Higgins of Texas, Inc. (J & H), appellee, filed for declaratory judgment in state court seeking a declaration of nonliability after Kenneco Energy, Inc. (Kenneco), appellant, tried and lost a case in New York federal court against its foreign insurance underwriters. J & H, as Kenneco's insurance broker, had procured the coverage from one of the underwriters. Kenneco counterclaimed on several liability theories and won a favorable jury verdict. Upon J & H's motion, the trial court rendered judgment notwithstanding the verdict.

### Summary of Facts

#### A. The Oil Contracts

In 1982, Kenneco, an oil trading company, purchased a tanker cargo of fuel oil from Petrobras, the Brazilian national oil company, at a cost to be determined by the market price published on the day the cargo arrived in New York harbor. While the oil was in transit, Kenneco re-sold it to Sun Oil Trading Company (Sun) at a fixed price of $30.55 per barrel upon delivery. Through this arrangement, Kenneco risked making or losing money, depending on the market price when the cargo arrived in New York.

Kenneco's contract with Petrobras was on a "C.I.F. basis;" that is, Kenneco took title in Brazil, but Petrobras was obligated to bear the cost of shipment, insurance, and freight. Kenneco's sale to Sun was on a "delivered basis," which meant that Kenneco assumed the risk of loss until Sun took title in New York.

#### B. The Insurance Coverage

Pursuant to its obligations to Kenneco, Petrobras obtained insurance with Banorte Seguradora, S.A. (Banorte), a Brazilian underwriter, which insured the cargo in the amount of the purchase price, plus 10 percent. Kenneco was also insured under a second policy that it had previously obtained through J & H from a group of London underwriters.

The ship carrying the cargo sailed from Rio de Janeiro on November 16, 1982. Almost immediately, the market price of fuel oil began to decline. The size of Kenneco's potential profit grew as the market fell because the price Sun had agreed to pay Kenneco was fixed while Kenneco's purchase cost would be determined upon the cargo's arrival in New York harbor. At the same time, insurance coverage on the cargo under the Banorte policy declined because it was tied to

---

*Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the dis-

position of this case, which was submitted prior to that date.

the market price Kenneco would pay Petrobras.

Kenneco became concerned about the extent of its coverage under the Banorte policy and its ability to collect from a Brazilian company. As a result, Kenneco sent its employee, Carolyn Brown, to meet with Jim Anderson of J & H on November 30, 1982, to discuss coverage under Kenneco's London policy.

Brown told Anderson about Kenneco's desire to "protect its profits" on the transaction. They discussed "contingency coverage" and "increased value coverage," two provisions of Kenneco's London policy, but did not distinguish between insuring against the loss of the Sun contract and insuring against the loss of the increased value of the cargo.

"Contingency coverage" would make the London underwriters liable if Banorte failed to pay on the primary coverage, provided Kenneco both purchased the oil and contracted to sell it on a C.I.F. basis, in what is known as a "back-to-back C.I.F. sale." Although Kenneco's sale to Sun was on a delivered, not a C.I.F., basis, Anderson prepared a declaration under the contingency provision.

Anderson also made a declaration under the increased value provision, which did not require back-to-back C.I.F. sales. It would cover the difference between the $30.55 per barrel sales price under the Sun contract and the Banorte coverage of purchase price plus 10 percent, thereby insuring that portion of Kenneco's profit in the cargo that exceeded the Banorte coverage.

On December 9, 1982, the cargo arrived in New York harbor both short and contaminated.[1] Sun rejected the cargo and canceled the contract. Kenneco then reconditioned the cargo and sold it in the existing depressed market.

Kenneco made claims under both the Banorte and the London insurance policies, seeking to recover the full amount of the profit it lost when Sun canceled the contract.

The London underwriters acknowledged coverage under the increased value provision and offered to pay their share of the shortage losses and contamination damage. Neither they nor Banorte, however, would pay for lost profits because the cargo was only partially damaged. In addition, in March 1983, the London underwriters declined Kenneco's contingency coverage because the transaction had not been back-to-back C.I.F.

## C. The Federal Lawsuit

In April 1983, Kenneco sued both the London underwriters and Banorte in New York federal district court. *Armada Supply, Inc. v. Wright,* 665 F.Supp. 1047 (S.D.N.Y.1987), aff'd in part, rev'd in part, 858 F.2d 842 (2d Cir.1988). Kenneco did not name J & H as a defendant in the federal action, although Kenneco offered evidence concerning representations made by J & H as to the extent of the coverage. *Armada Supply, Inc.,* 665 F.Supp. at 1057–61. The court concluded that Kenneco was not entitled to contingency coverage because the transaction was not back-to-back C.I.F. *Id.* at 1051. The court further found that the increased value provision covered physical loss and damage, but not the loss of the Sun contract and its profits. *Id.* These findings were affirmed on appeal. *Armada Supply, Inc.,* 858 F.2d at 851 (reversing part of the judgment for sue and labor expenses).

## D. The Texas Lawsuit

In June 1988, some five years after Kenneco filed the New York suit, J & H filed the present action for declaratory judgment against Kenneco in state court, seeking a declaration that Kenneco was barred from filing suit against it based on the doctrines of res judicata and collateral estoppel. Kenneco counterclaimed, seeking damages for (1) breach of the duty of good faith and fair dealing; (2) breach of the Texas Deceptive Trade Practices and Consumer Protection Act (DTPA); (3) breach of the Texas Insurance Code; (4) breach of warranty; (5) com-

---

1. The crew of the tanker had used a portion of the cargo for fuel, then pumped sea water into the cargo tanks. Kenneco obtained a damage award against the ship owners. *Armada Supply, Inc. v. S/T Agios Nikolas,* 613 F.Supp. 1459 (S.D.N.Y.1985). Kenneco was formerly known as Armada Supply, Inc.

mon-law fraud; (6) breach of contract; (7) negligent misrepresentation; and (8) negligence.

In the state proceeding, Kenneco presented evidence concerning the meeting on November 30, 1982, between Brown and Anderson, and of J & H's alleged misrepresentations concerning the extent of Kenneco's coverage under the London policy. Carolyn Brown and Jim Anderson both testified as witnesses to the November 30, 1982 meeting, just as they had done in the federal proceeding.

The jury found against J & H on each of the claims submitted, including (1) fraud; (2) unfair or deceptive insurance practices; (3) breach of contract; and (4) negligence. The jury also determined, however, that Kenneco discovered or should have discovered the basis for its claim by March 1983, when the London underwriters denied coverage. Kenneco moved for entry of judgment. J & H moved for judgment notwithstanding the verdict on the following grounds: (1) all claims were barred by collateral estoppel and res judicata; (2) the DTPA-insurance code and negligence claims were barred by the statute of limitations; and (3) no evidence supported the jury's findings of breach of contract and fraud. Without stating its reasons, the trial court granted J & H's motion for judgment n.o.v.

Kenneco asserts 11 points of error, all involving the trial court's grant of judgment n.o.v. J & H brings six cross-points regarding sufficiency of the evidence plus error in the calculation of damages and prejudgment interest.

### Judgment Notwithstanding the Verdict

■ A trial court has authority to grant a judgment n.o.v. when a directed verdict would have been proper. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991); TEX.R.CIV.P. 301. Directed verdict is proper when: (1) a defect in an opponent's pleadings makes them insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence is insufficient to raise an issue of fact. *City of San Benito v. Cantu*, 831 S.W.2d 416, 422 (Tex.App.—Corpus Christi 1992, no writ) (citing *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986)). Judgment n.o.v. is proper under the same circumstances. *Cantu*, 831 S.W.2d at 423. The Court reviews claims under the first two reasons de novo as matters of law and reviews claims under the third reason as evidentiary complaints under a legal sufficiency standard. *Id.*

■ If the trial court does not state its grounds for granting a motion for judgment n.o.v., as is the case here, the ruling will be upheld if any of the stated grounds in the motion will uphold the judgment. *Sbrusch*, 818 S.W.2d at 394. It is the appellant's burden to discredit each ground in the appellee's motion. *Id.; Friedman v. Houston Sports Ass'n*, 731 S.W.2d 572, 573 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

Accordingly, Kenneco has assigned a separate point to each ground in J & H's motion. Therefore, a reversal of the judgment n.o.v. would require us to sustain each point of error.[2]

### Res Judicata

We first address Kenneco's sixth point of error, which asserts the trial court erred in granting judgment n.o.v. on the basis of res judicata, and Kenneco's eleventh point of error, which states, in part, that judgment n.o.v. misapplies and violates federal law on res judicata.[3] These points of error will be reviewed de novo as matters of law. *Cantu*, 831 S.W.2d at 423.

■ Res judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as

---

2. As noted below, Kenneco's second and fifth points of error will not be addressed as they do not challenge any ground stated in J & H's motion.

3. Kenneco's eleventh point of error also asserts the trial court misapplied the federal law of collateral estoppel. This assertion will be treated in conjunction with Kenneco's seventh point of error regarding collateral estoppel.

well as related matters that, with the use of diligence, should have been litigated in the prior suit.[4] *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). Res judicata promotes judicial economy by preventing a plaintiff from splitting a cause of action and asserting in successive suits those claims that could have been litigated in the first instance. *Id.* at 628–29.

■■■ J & H relies on the prior federal judgment in asserting that Kenneco's state claims are barred by res judicata. Since the first suit was decided in federal court, federal law controls the determination of whether res judicata will bar a later state court proceeding. *Agrilectric Power Partners, Ltd. v. General Elec. Co.,* 20 F.3d 663 (5th Cir.1994); *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex.1990). Under federal law, res judicata applies, barring an exception, if: (1) the prior judgment was final on the merits and rendered by a court of competent jurisdiction; (2) the lawsuits involved the same cause of action; and (3) the parties were identical in both suits. *Eagle Properties, Ltd.,* 807 S.W.2d at 718; *Eubanks v. FDIC,* 977 F.2d 166, 169 (5th Cir.1992); *Sure–Snap Corp. v. State St. Bank & Trust Co.,* 948 F.2d 869, 872–74 (2d Cir.1991).

## A. Final Judgment by Competent Court

The parties do not dispute that the prior federal judgment was rendered by a court of competent jurisdiction or that the federal judgment was final and on the merits of Kenneco's claim.

## B. Same Cause of Action

■■■ To determine whether the same claim or cause of action is involved in two actions, the court applies the transactional approach, in which the critical issue is whether the two actions were based on the same nucleus of operative fact. *Agrilectric Power*

*Partners, Ltd.,* 20 F.3d at 665; *Antonsen v. Ward,* 943 F.2d 198, 201 (2d Cir.1991). In this inquiry, the court looks to the factual predicate of the claims asserted, not the legal theories upon which the parties rely. *Eubanks,* 977 F.2d at 171.

Kenneco's federal suit questioned the extent of its insurance coverage, while its state suit concerned the relationship between Kenneco and its insurance agent. Although the legal theories differ, the factual predicate does not. In both forums, Kenneco contended that J & H misrepresented the terms of the London policy. In both forums, the nucleus of operative fact is the meeting and discussion between Carolyn Brown of Kenneco and Jim Anderson of J & H on November 30, 1982. Res judicata's "same cause of action" requirement is met because the two actions were based on the same nucleus of operative fact.

## C. Same Parties

Kenneco argues that res judicata does not bar its second, or state, lawsuit because J & H was not a party to the New York lawsuit. J & H acknowledges that it was not a party to the federal litigation but maintains that it need not have been a party (or in privity with a party) to enjoy the benefits of res judicata.

■■■ In support of its proposition, J & H argues that res judicata's "same party" requirement applies only to the party against whom the preclusive effect of the prior judgment is being asserted. *See, e.g., Eagle Properties, Ltd.,* 807 S.W.2d at 718 n. 1 (observing that collateral estoppel no longer requires mutuality).[5] Contrary to J & H's assertions, both parties must be identical to, or in privity with, the parties in the prior suit for res judicata to apply. *Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops,* 24 F.3d 743, 745 (5th Cir.1994) (rejecting the argument

---

4. The term "res judicata" is also a generic description for the related concepts of claim preclusion (res judicata) and issue preclusion (collateral estoppel). *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). The preclusive effect of res judicata is broader than collateral estoppel because the prior judgment bars not only explicitly litigated claims but also claims arising from the same subject matter. *Id.* at 630.

5. Although we recognize that the supreme court in *Eagle Properties, Ltd.* has "noted" in a footnote that res judicata does not require identical parties, the authority it cites, 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE para. 0.44[1] (2d ed.1994), applies only to collateral estoppel, not res judicata.

that res judicata applies only to the party against whom the plea is asserted).

■ J & H, as an insurance broker representing Kenneco, is not in privity with the foreign underwriters who were defendants in the federal lawsuit. *See Armada Supply, Inc.*, 665 F.Supp. at 1058–59. Because J & H was not a party, or in privity with a party, to the federal litigation, res judicata's "same party" requirement is not met.

We sustain Kenneco's sixth point of error and that portion of the eleventh point of error regarding res judicata.

### Collateral Estoppel

In its seventh and eleventh points of error, Kenneco argues the trial court erred in granting judgment n.o.v. and, in particular, misapplied the federal law of collateral estoppel. As a matter of law, these points of error will be reviewed de novo. *Cantu*, 831 S.W.2d at 423. We need not decide the choice of law question because there is little difference between the Texas and federal formulations of collateral estoppel. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796 (1994); *Eagle Properties, Ltd.*, 807 S.W.2d at 721, 722.

■ To invoke collateral estoppel, a party must establish that: (1) the parties were cast as adversaries in the first action; (2) the facts sought to be litigated in the second action were essential to the judgment in the first action; and (3) those facts were fully and fairly litigated in the first action. *Sysco Food Servs., Inc.*, 890 S.W.2d 796; *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 674 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding). In addition, collateral estoppel should not be applied if it would be unfair or inappropriate. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986); *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir.1994).

■ Kenneco argues that the adversity requirement cannot be met because J & H was "aligned" with it in the federal suit. It is only necessary that the party against whom the plea of collateral estoppel is asserted be a party or in privity with a party in the prior litigation. *Blonder–Tongue Labs.,*

*Inc. v. University of Ill. Found.*, 402 U.S. 313, 323, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971); *Millard*, 847 S.W.2d at 674. Kenneco is the party against whom the effect is being asserted; thus, this requirement is met.

Kenneco also argues that the second prong of the test cannot be met because the facts underlying its state claims were not essential to determine its federal claim. In its federal suit, Kenneco actually litigated questions of contract construction. In its state suit, Kenneco sought to define the relationship between itself and its insurance agent. J & H maintains these issues are identical because the federal court made alternative findings that: (1) J & H did not make an agreement binding the London underwriters to coverage of lost profits; and (2) J & H lacked actual or apparent authority to make such an agreement. *Armada Supply, Inc.*, 665 F.Supp. at 1055. Kenneco contends the federal issue involved the sole question of authority and that any other finding is dicta. Kenneco also argues that the federal court's alternative findings do not demonstrate identity of issues because finding a lack of agreement does not exclude finding the existence of misrepresentations.

■ If alternative holdings in a prior judgment are essential to that judgment and are rigorously considered, they may be the basis for collateral estoppel. *Eagle Properties, Ltd.*, 807 S.W.2d at 722 (noting fraudulent inducement was raised and argued in both federal and state trials). Kenneco's state issues were not necessary to determine the outcome of the federal suit. In addition, we cannot say the state issues were fully and fairly litigated in the federal proceeding. Thus, Kenneco's state law claims are not barred from litigation by collateral estoppel.

We sustain Kenneco's seventh point of error and that portion of the eleventh dealing with collateral estoppel.

### Statute of Limitations

In its eighth point of error, Kenneco claims the trial court erred in granting judgment n.o.v. because its insurance code and negligence claims were not barred by the statute

of limitations.[6] As a matter of law, this point of error will be reviewed de novo. *Cantu,* 831 S.W.2d at 423.

### A. Violations of the Insurance Code

J & H maintains that Kenneco's claims were submitted on the basis of the DTPA and were barred by the DTPA's two-year statute of limitations. *See* TEX.BUS. & COM. CODE ANN. § 17.565 (Vernon 1987). The record does not support this assertion. Jury question number seven mirrors the language of TEX.INS.CODE ANN. art. 21.21, § 4(1) (Vernon Supp.1995);[7] thus, Kenneco's claim for unfair and deceptive practices is grounded in the insurance code and not the DTPA.

■ Like the DTPA, the statute of limitations for the insurance code is currently two years. *Id.* § 16(d). However, before April 4, 1985, article 21.21 contained no express limitations period,[8] and the courts applied a four-year statute. *Long v. State Farm Fire & Casualty Co.,* 828 S.W.2d 125, 128 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Tectonic Realty Inv. Co. v. CNA Lloyds of Texas Ins. Co.,* 812 S.W.2d 647, 655 (Tex.App.—Dallas 1991, writ denied) (collecting cases). The applicable limitations period is determined by the law in effect at the time the action accrued. *Long,* 828 S.W.2d at 128.

■ As Kenneco concedes, its insurance claim accrued in March 1983, when coverage was denied. Thus, the four-year statute of limitations applies. Three years after the cause of action accrued, in December 1986, Kenneco contracted with J & H to toll the statute of limitations until 30 days after the

final appeal of the federal case.[9] Kenneco filed its counterclaim in August 1988, one month before the opinion of the Second Circuit issued and before the tolling agreement expired. We find that Kenneco's insurance code claim is not barred by limitations.

### B. Negligence and Equitable Estoppel

■ The statute of limitations for negligence is two years. TEX.CIV.PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986). The statute begins to run when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). J & H argues that Kenneco's negligence claim came into existence in March 1983 and was barred by the statute before 1986, when Kenneco contracted to toll limitations. Kenneco alleges that its negligence claim arose in August 1988 because, until the Second Circuit affirmed the trial court, it did not suffer injury or damages.

■ We disagree. Kenneco's negligence claim, like its insurance claim, arose in March 1983 because it incurred injury and damages when the underwriters denied coverage. *See Murray,* 800 S.W.2d at 828 (finding that breach of good faith accrues when coverage is denied, not the date a separate suit to determine coverage is resolved); *Long,* 828 S.W.2d at 128 (finding that breach of the DTPA accrues when coverage is denied). Thus, barring any tolling device, Kenneco's negligence limitations would have run in March 1985.

---

**6.** Kenneco argues that "none of the claims found by the jury is time-barred." This Court need not review all theories of recovery as J & H's motion for judgment n.o.v. asserts the statute of limitations only as to Kenneco's DTPA-insurance code and negligence theories.

**7.** Jury question number seven defines "unfair or deceptive act or practice," in part, as "making or causing to be made any statement misrepresenting the terms, benefits, or advantages of an insurance policy." Compare the insurance code definition: "Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy...." TEX. INS.CODE ANN. art. 21.21, § 4(1) (Vernon Supp.

1995). Also compare the DTPA "laundry list" which defines deceptive acts, in part, as "passing off goods or services as those of another ... representing that goods or services are of a particular standard...." TEX.BUS. & COM.CODE ANN. § 17.46(b)(1), (7) (Vernon 1987).

**8.** Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, 1951 Tex.Gen.Laws 868, 1075 (article originally numbered 21.20), *amended by* Act of Apr. 4, 1985, 69th Leg., R.S., ch. 22, §§ 3–4, 1985 Tex. Gen.Laws 395, 395–96.

**9.** A party may contractually lengthen a statute of limitations. *Washington v. Georges,* 837 S.W.2d 146, 148 (Tex.App.—San Antonio 1992, writ denied).

Kenneco contends that it was induced into permitting the statute to run by J & H's assurances that the underwriters would eventually "respond to the loss." Kenneco argues that these representations constitute equitable estoppel, thereby precluding J & H from asserting a statute of limitations defense.

■■■ Equitable estoppel may bar a limitations defense when a party induces a prospective plaintiff to refrain from filing suit within the applicable time period. *Gibbs v. Main Bank of Houston,* 666 S.W.2d 554, 558–59 (Tex.Civ.App.—Houston [1st Dist.] 1984, no writ). Equitable estoppel requires: (1) a false representation or concealment of material fact; (2) made with knowledge, actual or constructive; (3) with the intention that it should be acted on; (4) when the plaintiff has no knowledge of the real facts; and (5) the plaintiff acts or relies on the representation to his prejudice. *O'Dowd v. Johnson,* 666 S.W.2d 619, 621 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

These elements were addressed in jury question number 10, in which the jury found that Kenneco failed to take action before December 1986 because J & H "knowingly engaged in conduct solely calculated to induce Kenneco to refrain from or postpone filing suit." J & H claims this finding is erroneous as the jury question does not satisfy each element of equitable estoppel. A similar question in *Neeley v. Bankers Trust Co. of Texas,* 757 F.2d 621, 632 & n. 14 (1985), also did not enumerate the estoppel elements but was sufficient to support a finding of equitable estoppel.

■■■ J & H further argues that the jury's finding contradicted its affirmative response to question number nine, where it found that Kenneco should have known the facts of its case in March 1983. The discovery rule is similar to the estoppel doctrine but is not mutually exclusive. *See Neeley,* 757 F.2d at 632 nn. 13–14 (finding estoppel despite the apparent contradiction of similar jury an-

swers). That is, a cause of action can accrue for purposes of the statute of limitations, but a party may be persuaded by the representations of another to forego suit until the statute has run. In such a case, the statute of limitations should be tolled and the wrongdoer estopped from asserting a limitations defense. *Neeley,* 757 F.2d at 632.

In this case, Kenneco should have discovered its claim in March 1983. However, it delayed filing suit because it relied on J & H's representations that the claim would eventually be paid. Thus, J & H is estopped from asserting a limitations defense against Kenneco's negligence cause of action.[10]

We sustain Kenneco's eighth point of error.

## Constitutional Points of Error

In its ninth and tenth points of error, Kenneco claims that its rights to jury trial and due process were violated by the trial court's grant of judgment n.o.v. These claims were not presented to the trial court and may not be raised on appeal. *Hernandez v. State Bar of Texas,* 812 S.W.2d 75, 78 (Tex.App.—Corpus Christi 1991, no writ); Tex.R.App.P. 52(a).

We overrule Kenneco's points of error nine and 10.

## Sufficiency of the Evidence: Arguments and Cross–Points

■■■ In its first five points of error, Kenneco alleges judgment n.o.v. was improper because the evidence was sufficient to support the jury's findings.[11] J & H claims there is no evidence to support the findings; alternatively, J & H argues by cross-points that there is insufficient evidence to support the findings. When judgment n.o.v. is granted, the appellee may bring forward by cross-point any ground, including factual sufficiency, which would have vitiated the verdict or prevented an affirmance of the judgment. *Winograd v. Clear Lake City Water Auth.,*

10. The legal and factual sufficiency of the jury's findings will be discussed below.

11. Kenneco's second and fifth points regarding insurance and negligence will not be addressed

because, in its motion for judgment n.o.v., J & H attacked only the evidentiary basis of breach of contract and common-law fraud.

811 S.W.2d 147, 159 (Tex.App.—Houston [1st Dist.] 1991, writ denied); Tex.R.Civ.P. 324(c).

A trial court may grant judgment n.o.v. if there is no evidence to support the jury findings. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). In determining a "no evidence" question, the reviewing court considers only that evidence and reasonable inferences that tend to support the jury's findings, disregarding all contrary evidence and inferences. *Id.* If there is more than a scintilla of competent evidence to support the jury's finding, then the judgment n.o.v. will be reversed. *Navarette*, 706 S.W.2d at 309.

### A. Fraud

In its first point of error, Kenneco maintains "there is ample evidence" to support the jury's finding of common-law fraud. Common-law fraud requires that: (1) the speaker make a material representation; (2) the representation was false; (3) the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker intended that another would act upon the representation; (5) another party relies on the representation; and (6) thereby suffers injury. *Eagle Properties, Ltd.*, 807 S.W.2d at 723; *Haney v. Purcell Co.*, 796 S.W.2d 782, 785 (Tex.App.—Houston [1st Dist.] 1990, writ denied). We specifically address the intent element because, in J & H's motion for judgment n.o.v. and first cross-point, it contends there is no evidence that it made any misrepresentation knowingly or recklessly.

The record evidence favorable to the jury's finding shows that Jim Anderson told Carolyn Brown that Kenneco "was covered" under its marine cargo policy. Anderson admitted reading the policy and noting that, to be effective, the contingency clause required back-to-back C.I.F. sales. He testified that he understood the transaction to be C.I.F. back-to-back, but he did not indicate this understanding in his notes, the insurance declarations, or his telex to the London underwriters. Brown testified that she told Anderson the contract was on a delivered-basis, not C.I.F. The evidence suggests that Anderson acted knowingly because he was aware that the policy required a C.I.F. sale and that the contract was not C.I.F.

There is some evidence that Anderson did not understand the concept of C.I.F. back-to-back because he was inexperienced with this type of transaction. Despite his inexperience, Anderson did not seek help from more experienced J & H employees or the London underwriters. Also, Anderson told Brown the coverage would suit her needs, but he did not seek clarification from Brown as to what she meant by "protected profits." Thus, the evidence also suggests that Anderson acted recklessly when he positively asserted that coverage was applicable in a C.I.F.-delivered transaction when he did not know that was the case. We conclude that more than a scintilla of evidence supports the jury's finding.

Because we find it was improper to set aside the jury's verdict on the issue of fraudulent intent, we now address J & H's cross-point concerning factual insufficiency. *See Fajkus v. First Nat'l Bank of Giddings*, 735 S.W.2d 882, 885 (Tex.App.—Austin 1987, writ denied). In considering a complaint of factual sufficiency, the reviewing court must consider and weigh all evidence and may set aside the verdict only if the findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

In addition to the evidence favorable to the jury's findings, the evidence also shows that Brown and Anderson did not discuss the distinction between loss of the cargo and loss of the contract. As Kenneco's expert testified at trial, Anderson misled Brown about the extent of contingency coverage but did not mislead her into thinking she had insurance against the loss of the Sun contract.

When there is conflicting evidence on a submitted issue, an appellate court usually regards the jury verdict on that issue as conclusive. *Jauregui v. Jones*, 695 S.W.2d 258, 263 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). We cannot say that a finding of

knowing or reckless misrepresentation is against the great weight and preponderance of the evidence.

We overrule J & H's first cross-point and sustain Kenneco's first point of error regarding evidence of fraud.

## B. Breach of Contract

In its third and fourth points of error, Kenneco asserts there is "ample evidence" to support the jury's finding that J & H breached oral agreements to secure "*a policy* of insurance" for Kenneco (1) protecting the profits of the Sun contract and (2) providing contingency coverage. (Emphasis added.) In its second cross-point, J & H maintains that there is no evidence or, alternatively, factually insufficient evidence to support the existence of any *additional* contract and that the only evidence offered at trial concerned Kenneco's *existing* marine policy. (Emphasis added.) Thus, J & H argues, there could be no breach of contract.

■■■ An implied contract arises when, in the ordinary course of dealing, there was mutual intent to contract. *City of Houston v. First City, Texas,* 827 S.W.2d 462, 473 (Tex.App.—Houston [1st Dist.] 1992, writ denied). J & H was awarded Kenneco's business on a competitive bid. Over a period of time, J & H designed coverage and adjusted claims for Kenneco. As Kenneco presented desired objectives, J & H would either obtain new coverage or make declarations under existing policies. As with the November 1982 meeting, each agreement to implement a desired result was an agreement to provide coverage, regardless of the form the coverage took. The record contains more than a scintilla of evidence necessary to uphold the jury's findings.

Because we find it was improper to set aside the jury's verdict on the issue of breach of contract, we now address J & H's cross-point contending the jury's finding is supported by insufficient evidence. Additional evidence suggests that there was no meeting of the minds as Anderson thought Brown had said the transaction was C.I.F. back-to-back. We cannot say, however, that a finding of breach of contract was against the great weight and preponderance of the evidence.

We overrule J & H's second cross-point and sustain Kenneco's third and fourth points of error regarding evidence of breach of contract.

## C. Equitable Estoppel

In its third and fourth cross-points, J & H argues that there is no evidence or, alternatively, insufficient evidence to support the jury's finding that Kenneco failed to toll limitations before December 1986 because J & H "knowingly engaged in conduct solely calculated to induce Kenneco to refrain from or postpone filing suit."

J & H mischaracterizes this question as one granting a limitations extension under the DTPA.[12] This question follows other questions which outline an insurance code violation. Thus, the question addresses equitable estoppel and not statutory estoppel.

Equitable estoppel includes (1) a false representation or concealment of material fact; (2) made with knowledge, actual or constructive; (3) with the intention that it should be acted on; (4) when the plaintiff has no knowledge or way to obtain knowledge of the real facts; and (5) the plaintiff acts or relies on the representation to his prejudice. *Villages of Greenbriar v. Torres,* 874 S.W.2d 259, 264 (Tex.App.—Houston [1st Dist.] 1994, writ denied). These elements are similar to the elements of common-law fraud discussed above. J & H does not dispute that material misrepresentations were made or that Kenneco relied on them; it disputes the element of intent.

■■■ The evidence favorable to the jury's findings indicates that J & H acted with intent to induce Kenneco to postpone filing suit. Over a period of several months, J & H told both Kenneco and the London under-

---

**12.** Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987) extends the statute of limitations for 180 days if the plaintiff proves delay was caused "by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or to postpone the commencement of the action." The recent version of the insurance code not applicable to this case contains a similar provision. Tex.Ins.Code Ann. art. 21.21, § 16(d) (Vernon Supp.1995).

writers that Kenneco was entitled to contingency coverage when J & H knew Kenneco was not so entitled. The evidence also suggested that, during this timeframe, J & H billed Kenneco and accepted its premium when it knew the London underwriters would deny Kenneco's claim. There is sufficient evidence to support the jury's findings of equitable estoppel.

J & H argues that it acted to facilitate a favorable settlement of Kenneco's claim. Although the evidence suggests that J & H may have had more than one motive in its dealings with Kenneco, we cannot say that the jury's findings are against the great weight and preponderance of the evidence.

We overrule J & H's third and fourth cross-points.

### Damages

■ Upon reversal of judgment n.o.v., it is our duty to render the judgment that the trial court should have entered. *McDade v. Texas Commerce Bank, N.A.*, 822 S.W.2d 713, 721 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Hunter v. National County Mut. Fire Ins. Co.*, 687 S.W.2d 110, 113 (Tex.App.—Dallas 1985, no writ). In this event, J & H argues in its sixth cross-point that Kenneco's motion for judgment inaccurately calculated damages because it disregarded the jury's answer to question number 12 about the amount of damages incurred before December 15, 1984.

Question number 12 was submitted according to section 16 of the pre–1985 Insurance Code, which limits damages to "a point two years prior to the institution of the action." [13] Act of May 21, 1973, 63d Leg., R.S., ch. 143, § 2, 1973 Tex.Gen.Laws 322, 338, *amended by* Act of March 13, 1985, 69th Leg., R.S., ch. 22, §§ 3–4, 1985 Tex.Gen.Laws 395, 395–96

(applying to actions accruing on or after its immediate effective date and permitting treble damages, court costs, and reasonable attorney fees). In question number 11, the jury assessed total damages at $1,500,000. J & H correctly argues that Kenneco's actual damages are limited to $363,000, the difference between the total damages and the amount limited by the statutory deadline. After trebling these damages,[14] Kenneco's insurance verdict is worth $1,089,000.

■ We sustain J & H's sixth cross-point but note that it is irrelevant to the proper damage award. Kenneco did not choose between alternative recoveries in its motion for judgment. When a prevailing party fails to elect between alternative measures of damages prior to judgment, the trial court should choose the finding affording the greatest recovery and render judgment accordingly. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987); *Century 21 Page One Realty v. Naghad*, 760 S.W.2d 305, 309 (Tex.App.—Texarkana 1988, no writ). If the trial court does not make the election, as it did not in this case because it granted J & H's judgment n.o.v., the appellate court must make the appropriate election. *See Southern County Mut. Ins. Co. v. First Bank & Trust*, 750 S.W.2d 170, 173–74 (Tex.1988).

In addition to the insurance code verdict, the jury awarded $1.5 million for Kenneco's fraud claim and $1.7 million for its negligence claim. The jury also awarded $412,273.66 for J & H's failure to secure contingency coverage and $1,560,000 for J & H's failure to secure profit coverage. The total recovery for breach of contract is $1,972,273.66. Thus, the alternative theory providing the greatest recovery is the breach of contract finding, not the insurance code finding.

**13.** The jury was instructed that Kenneco "took action on its claim on December 15, 1986," the day it signed the tolling agreement. Kenneco filed its counterclaim in August 1988. We do not address whether December 15, 1984, the cut-off date in question 12, satisfies the statutory requirement of "a point two years prior to the institution of the action."

**14.** In its reply brief, Kenneco requested that prejudgment interest be trebled as part of actual damages. Although prejudgment interest has

been trebled under the insurance code, *see, e.g., State Farm Fire & Casualty Co. v. Gros*, 818 S.W.2d 908, 918 (Tex.App.—Austin 1991, no writ), it has also been excluded, *see, e.g., Group Medical & Surgical Serv., Inc. v. Leong*, 750 S.W.2d 791, 798 (Tex.App.—El Paso 1988, writ denied). Because we find that Kenneco did not timely raise this issue, we do not decide if prejudgment interest should be included as actual damages to be trebled.

## Prejudgment Interest

In its fifth cross-point, J & H complains that Kenneco, in its motion for judgment, sought an improper accrual date and an improper rate of prejudgment interest. Kenneco sought prejudgment interest at an unspecified rate, compounded daily, beginning June 20, 1983, six months after the date it claimed that Sun rejected its cargo. J & H contends that the correct calculations are governed by Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a), (g) (Vernon Supp.1995), which provides for simple interest, beginning on the 180th day after the defendant receives written notice of the claim or the day suit is filed, whichever occurs first. We disagree.

▇ In *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985), the Supreme Court authorized recovery of prejudgment interest in personal injury claims. In 1987, the legislature added section 6 to article 5069–1.05 and created a statutory recovery system for wrongful death, personal injury, and property damages cases. Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex.Gen.Laws 608, 610, *amended by* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 3, §§ 1, 3, 1987 Tex.Gen.Laws 51, 51–52 (effective Sept. 2, 1987). The rationale of *Cavnar,* however, applies to cases not covered by the statutory scheme, including contract claims where the measure of damages is unspecified.[15] *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929, 930 (Tex.1988); *Olson v. Bayland Publishing, Inc.,* 781 S.W.2d 659, 666 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

Under *Cavnar,* prejudgment interest accrues six months after the occurrence giving rise to the cause of action. 696 S.W.2d at 555. In addition, the rate is calculated according to the provisions of Tex.Rev.Civ. Stat.Ann. art. 5069–1.05, § 2 (Vernon Supp. 1995) (providing the formula for calculation of post-judgment interest). *Id.* at 554.

We previously found that Kenneco's cause of action accrued in March 1983. Thus, the proper accrual date for prejudgment interest

is six months later, September 1983, to be calculated at the same rate as that of post-judgment interest.

▇ J & H argues that prejudgment interest must be compounded annually, as suggested by *Cavnar's* reference to section 2, which provides that post-judgment interest be compounded annually. Some courts have followed this rationale. *See, e.g., Enterprise–Laredo Assocs. v. Hachar's, Inc.,* 839 S.W.2d 822, 839 (Tex.App.—San Antonio), *writ denied per curiam,* 843 S.W.2d 476 (Tex.1992); *Winograd v. Willis,* 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Other courts, however, permit daily compounding under *Cavnar* despite its reference to section 2. *See, e.g., Spangler v. Jones,* 861 S.W.2d 392, 398–99 (Tex.App.—Dallas 1993, writ denied); *O'Reilly v. Grafham,* 797 S.W.2d 399, 401 (Tex.App.—Austin 1990, no writ).

*Cavnar* expressly states that prejudgment interest should be compounded daily and refers to section 2 only for rate calculation purposes. 696 S.W.2d at 554. Although it would be sensible to have one compounding rule for all cases, it appears the legislature has singled out the types of cases requiring special interest calculations. *See* Tex.Rev. Civ.Stat.Ann. art. 5069–1.05, § 6 (limiting postjudgment interest to annual compounding); *id.* § 7 (limiting prejudgment interest for condemnation claims to simple interest). We therefore find that prejudgment interest awards in cases not specified in section 6 should be computed based on the daily compounding directive in *Cavnar.* In this case, we award Kenneco prejudgment interest to be compounded daily.

## Summary

We sustain Kenneco's points of error and overrule J & H's cross-points. Consequently, we reverse the judgment n.o.v. and render judgment that Kenneco recover $1,972,273.66 in actual damages, attorney fees of $275,000 through trial and appeal to this Court as stipulated by the parties, prejudgment interest to be compounded daily, postjudgment

**15.** Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987) applies to contracts which specify the sum

payable.

interest at the maximum legal rate, plus costs of court.

The appellee requested a vote to determine if the case should be reheard en banc, pursuant to Tex.R.App.P. 79(d), (e) and Tex. R.App.P. 100(f).

OLIVER–PARROTT, C.J., and COHEN, HUTSON–DUNN, MIRABAL, O'CONNOR, HEDGES, ANDELL, and TAFT, JJ., voted against en banc consideration.

WILSON, J., did not participate.